JOHN J. HOLODOOK, as Parent and Natural Guardian of JAMES J. HOLODOOK, an Infant, et al., Appellants, *v.* CORNELIUS SPENCER, Defendant and Third-Party Plaintiff-Respondent; SOPHIA HOLODOOK, Third-Party Defendant-Appellant.

Third Department, December 13, 1973.

*Coffin, Inman & Inman* (*Myron Komar* of *Donohue, Bohl, Clayton & Komar* of counsel), for appellants.

*Hesson, Ford, Grogan, Sherwood & Whalen* (*Dale M. Thuillez* of counsel), for defendant and third-party plaintiff-respondent.

*Charles H. Carpenter* for third-party defendant-appellant.

GREENBLOTT, J. This is an appeal from an order of the Supreme Court at Special Term, entered in Columbia County on March 7, 1973, which denied a motion to dismiss the counterclaim and third-party complaint.

These actions arise out of injuries sustained by a four-year-old infant pedestrian, James J. Holodook, who, while allegedly running from between parked cars on a street in Hudson, New York, was struck by an automobile owned and operated by the defendant and third-party plaintiff. The infant's father commenced an action for the infant's injuries and a derivative action for medical expenses and loss of services. The defendant answered, generally denying the allegations of the complaint and counterclaiming against the father. He sought indemnification for a portion or all of any verdict against him on the ground that the parent's lack of attention, care and control of

his son was the proximate cause of the accident and resulting injuries. The defendant also commenced an independent third-party action against the infant's mother seeking the same relief. The parents' motion to dismiss the counterclaim and third-party complaint on the ground that they failed to state a cause of action was denied by Special Term.

The issue before us is whether a cause of action is stated against the parents of a four-year-old infant, when it is alleged that the accidental injuries sustained were caused by the parents' negligence in failing to " provide for the proper care, maintenance and instruction of the child and [leaving] a four-year-old child under such circumstances that the child ran from between parked cars into the street as a result of which he collided with the vehicle being operated by the defendant."

The attempt to impose liability upon the parents is undertaken pursuant to *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143), which eliminated the distinction between " active " and " passive " negligence and held that joint tort-feasors liable for a plaintiff's injuries are entitled to contribution from each other in proportion to their relative degrees of responsibility. There can be little doubt that the actions charged to the parents in this case would have been categorized as " passive " under pre-*Dole* law so that the present counterclaim and third-party claim would not have been permitted. Prior to *Dole,* a " passive " tort-feasor was a tort-feasor nevertheless, but subject to liability only if sued by the plaintiff in the first instance. While we do not here undertake to settle the debate over whether *Dole* is " substantive " or " procedural ", we believe the decision therein can he fairly characterized as having eliminated an unfair device whereby a party who had committed an otherwise actionable tort was immunized from liability because of the existence of another tort-feasor whose participation in the plaintiff's injuries was more " active ". However, in achieving this result, *Dole* creates no torts that did not previously exist; thus it does not in and of itself constitute authority allowing these claims, for it is not every act or omission which constitutes a tort. In other words, *Dole* presupposes two or more parties guilty of a legally actionable wrong, not merely two parties who are in a relation to each other such that one might have been spared from liability had the other acted differently. The question we must decide is therefore identical to that presented in *Graney* v. *Graney* (43 A D 2d 207 [decided herewith]) : is a parent liable in tort, where a child is injured as a result of a failure of supervision where there has been no act or omission

which would have given rise to liability had the injured party been a stranger?

In answering this question, an examination of the history of tort liability between parents and children is helpful. Until recently, a parent could not be sued by its offspring for non-willful torts, and the three leading cases establishing this proposition were *Badigian* v. *Badigian* (9 N Y 2d 472), *Cannon* v. *Cannon* (287 N. Y. 425), and *Sorrentino* v. *Sorrentino* (248 N. Y. 626). These cases ostensibly relied upon a principle of preserving family harmony, but this approach, as adopted in New York and a number of other States, became the subject of widespread criticism, including a dissent by Judge FULD in *Badigian*. As a result, a rapid judicial erosion of the intrafamily immunity doctrine took place, its interment in New York occurring with the decision in *Gelbman* v. *Gelbman* (23 N Y 2d 434). The Court of Appeals, per Judge BURKE, found that it could no longer "conclude that the doctrine is essential for the purpose of preserving family unity" (p. 437), and that therefore, *Sorrentino, Cannon,* and *Badigian* should be overruled. However, the court also noted that family harmony was not likely to be undermined in a case arising out of an automobile accident where there existed compulsory insurance, and further stated (p. 439): "By abolishing the defense of intrafamily tort immunity for nonwillful torts, we are not creating liability where none previously existed. Rather, we are permitting recovery, previously denied, after the liability has been established."

These statements have resulted in various interpretations. Some are of the view that *Gelbman* intended to abolish the immunity defense only in automobile cases or that *Gelbman* is applicable only in situations where the defendant parents are protected by insurance. (See, e.g., *Graney* v. *Graney,* 75 Misc 2d 828.) This view is supported by the fact that the common thread running through *Sorrentino, Cannon* and *Badigian* was that all involved the negligent operation of an automobile by a parent, and also by the statement in *Gelbman* that the litigation was really between the plaintiff and the insurance carrier (*Gelbman* v. *Gelbman, supra,* p. 438).

In our opinion, either view is too narrow. While *Gelbman* and the three cases it overruled coincidentally involved automobiles, we feel that they should be characterized as cases where a tort had clearly been committed and liability would most certainly have been imposed but for the familial relationship between the parties. *Gelbman* did no more, therefore, than to eliminate a defense which had been available solely to

parents in suits by their children, or vice versa, where there was no question but that an otherwise actionable wrong had been committed.

In so doing, *Gelbman* did not create new torts. Had it done so, the very family relationship which had previously consti-tuted merely a defense, would have become a basis for classify-ing as torts acts or omissions which could not create any liability to the world at large. That such a result could not have been intended is apparent when we examine the decisions in a host of other jurisdictions which did away with parental immunity before *Gelbman*. The case most frequently cited as having commenced the judicial erosion of the doctrine (with-out use of an exception placing the parent in another role, such as owner of a business [see, e.g., *Borst* v. *Borst,* 251 P. 2d 149 (Wash.)]) was *Goller* v. *White* (20 Wis. 2d 402), decided in 1963, six years before *Gelbman*. In that case, a foster parent* permitted his child to ride in an unsafe manner upon a tractor being operated by the parent, resulting in injuries. Such negligence was not ''parental'' in nature, and liability would have clearly existed had the parties not been parent and child. In holding that summary judgment dismissing the child's complaint against his foster parent was improper, the court abrogated the rule of parental immunity in negligence cases with two specific exceptions (p. 413): '' (1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care ''. Other jurisdictions have also pre-served these exceptions, and have explained that ''parental functions are activities which directly relate to the parental duties of care and supervision of the child'' whereas '' the driving of a motor vehicle may not be really a parental func-tion '' (*Rodebaugh* v. *Grand Trunk Western R. R. Co.,* 4 Mich. App. 559, 567).

An example of the operation of the *Goller* exceptions and their underlying rationale is *Lemmen* v. *Servais* (39 Wis. 2d 75). There, the six-year-old plaintiff had been struck by a car after alighting from a school bus. The defendants filed third-party complaints against the parents, alleging negligent or inadequate parental supervision. The court upheld a dismissal of the third-party complaint, holding that the parents '' were

---

* As a foster parent, the defendant was *in loco parentis* and thus had all the rights, duties and liabilities of a natural parent.

acting within the scope of an exercise of ordinary parental discretion with respect to other care of their child " (p. 78). The court then went on to say (pp. 79-80):

" The familial obligations imposed by nature because of the parental relationship, imperfect though they may sometimes be because of the ever present common denominator of human behavior, are quite distinct from the general obligation which the law imposes upon every one in all his relations to his fellowmen, and for the breach of which it gives a remedy. The two exceptions enunciated in *Goller* recognize that within the framework of parental authority and discretion, parents must be accorded immunity from litigation which in fact would disrupt family harmony and unity. The immunity is limited to transactions which are essentially parental. *Dunlap* v. *Dunlap* (1930), 84 N. H. 352, 150 Atl. 905.

" A new and heavy burden would be added to the responsibility and privilege of parenthood, if within the wide scope of daily experiences common to the upbringing of children a parent could be subjected to a suit for damages for each failure to exercise care and judgment commensurate with the risk. Such is not the rule of *Goller.*"

We also believe that such is not the rule of *Gelbman*. While the Court of Appeals did not explicitly speak of exceptions, the opinion did approvingly refer to " the convincing arguments advanced by Judge FULD in his comprehensive dissent in *Badigian* " (*Gelbman* v. *Gelbman, supra,* pp. 437-438). In our view, Judge FULD had in mind the exceptions with which we are concerned, for he framed the question as " that of the parent's liability for negligence, both personal and active, negligence which may * * * if shown to one not a child * * * would be at least a civil wrong " (*Badigian* v. *Badigian, supra,* p. 481 [FULD, J., dissenting]), and distinguished situations which would be classified as falling within the area of parental functions.

We would therefore be inclined to conclude that *Gelbman* should be read to implicitly include the *Goller* exceptions to the abrogation of the immunity rule. However, there is, in our view, a better basis for deciding this case and we feel it is necessary to examine the issue before us in light of the fact that prior to *Gelbman,* it was unnecessary in an individual case to examine the nature of the duty which had been violated, because the immunity doctrine constituted a defense in any case of non-willful injury. Negligence as it is legally understood refers to a failure to perform, or the improper performance of a

*legal* duty which results in injury to another. In the present case, we are faced with an allegation of "negligence" in the supervision of a child. While we are in full agreement that the duty to supervise a child is high on the scale of *moral* responsibility, we are nevertheless equally certain that if there exists a civil cause of action for mere nonsupervision which falls short of violating the provisions of the family law and the penal law, such an action must exist because nonsupervision should be deemed a tort, and not because of the abrogation in *Gelbman* of the immunity defense.

In our view, such a cause of action does not exist. The duty to supervise a child in his daily activities has as its objective the fostering of physical, emotional and intellectual development, and is one whose enforcement can depend only on love. Each child is different, as is each parent; as to the former, some are to be pampered while some thrive on independence; as to the latter, some trust in their children to use care, others are very cautious. Considering the different economic, educational, cultural, ethnic and religious backgrounds which must prevail, there are so many combinations and permutations of parent-child relationships that may result that the search for a standard would necessarily be in vain — and properly so. Supervision is uniquely a matter for the exercise of judgment. For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child. Unfortunately, it is only when injury occurs that that judgment will be called into question— and the parents themselves will be the first to do so. Surely there can be no place in such a natural scheme for second-guessing by a jury whose members' views on the subject will be unavoidably influenced by their own unique and inimitable experiences, both as children and parents.

Surely, accidents will be rare where parents hold tight rein over their children 24 hours a day. But just as surely, such a procedure cannot be employed with all but a few children lest they never achieve the maturity society demands — and the decision as to which children need such supervision must be left not to juries, but to their parents.

It is by now apparent that we have come full-circle to the conclusion that supervision of a child is a "parental function" such as would constitute an exception under *Goller*. We have not done so merely to show our agreement with that case; we have done so to show that in those cases where the only

parental act which is alleged is an act of erroneous judgment regarding the supervision of a child, no legal duty has been breached, and therefore no tort committed. Since no cause of action exists, the presence or absence of implicit exceptions to the *Gelbman* rule becomes irrelevant to our conclusion that no cause of action is stated.

We are not unmindful of those early cases involving *non sui juris* children which left it for the jury to determine whether a parent had not acted reasonably in supervision of a child in circumstances similar to those present here (e.g., *Weil* v. *Dry Dock, East Broadway & Battery R. R. Co.*, 119 N. Y. 147; *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455: *Hartfield* v. *Roper & Newell*, 21 Wend. 615). In each of those cases, however, the factual question was presented in the context of an allegation of negligence on the part of the parent which was imputable to the infant plaintiff so as to raise a defense of contributory negligence. By the enactment of former section 73 of the Domestic Relations Law, now section 3–111 of the General Obligations Law, the Legislature has declared that "the contributory negligence of the infant's parent  *  *  *  shall not be imputed to the infant". In so doing, the Legislature eliminated the legal identity between the parent and the *non sui juris* child so that the latter's recovery would not be reduced because of the former's acts; it did not create a rule by which parents were subjected to liability, and we are unaware of any case holding that parents, as defendants, were liable to their children at common law for a mere lack of supervision. Therefore, cases such as *Weil, Mangam* and *Hartfield* cannot properly be cited for the proposition that lack of supervision constitutes a tort.

We are also urged to hold at the very least that lack of supervision constitutes a tort where there exist "special circumstances" such as extreme infancy, mental or physical impairment, or the like. We decline to do so, for such cases are not legally distinguishable insofar as the degree of deference which must be given to the judgment of parents. There comes a point in the development of all children, even those suffering impairments and disabilities, when their parents must decide that they must be allowed to engage in certain activities with some independence. No less than in the case of the "normal" child, such a decision is an exercise of judgment, not to be inquired into by a jury. If the rule were otherwise, we have no doubt that every case would become one of "special circumstances".

Having thus concluded that no cause of action exists in favor of a child against his parent for lack of or inadequate supervision*, there is no basis for a counterclaim or third-party complaint under *Dole*. Certainly parents owe no duty to the world at large to "prevent" tort-feasors from injuring their children, and in absence of a breach of a legal duty to either the plaintiff or the defendant, no *Dole* claim can be interposed. To hold otherwise and allow a tort-feasor to "recover" for a parent's lapse of judgment where the injured child himself cannot recover directly, can have no effect but to discourage parents' active prosecution of their children's claims for fear of being held personally liable.

The defendant urges upon us an analogy to *Dole* insofar as it enabled an employer who could not have been sued directly by an injured employee to be brought in as a third-party defendant, and thus subjected to liability greater than that which would have prevailed under the Workmen's Compensation Law. In our view, the comparison is inappropriate. Insofar as an employer is negligent in having done an act which would have rendered him liable but for his status as an employer, he is being called upon to reimburse his codefendant for the damages for which such codefendant has been held liable, but which were in part the *legal* fault of and thus caused by the employer. Prior to *Dole*, the employer would still have incurred "liability" of a sort; the Workmen's Compensation Law merely imposed a limitation upon the remedy. If, under *Dole*, a jury requires him to pay a higher award, it can only be because he has committed a tort under well-established standards. He is not being made to pay for injuries for which he formerly had total immunity, and thus the difference is one of degree and not of kind.

In sum, we conclude that there is no cause of action by a child against his parent unless the parent could have been "found 'at fault' under standards of liability pertaining to persons who are not in a family relation to the injured party" (Comment — Tort Liability Within the Family Area — A Suggested Approach, 51 N. W. U. L. J. 610, 619). Moreover, there is no duty owed by the parent to potential tort-feasors. Therefore, there can be no basis for a claim against the parent by such tort-feasor for contribution based merely on an alleged lack of super-

---

* We are not here concerned with the duties of persons who have sometimes been considered, perhaps erroneously, as *in loco parentis,* such as school teachers, camp operators, etc. There cannot and does not exist in such cases the same kind of broad responsibility, and the relationship of such persons to the child is limited to commercial or professional objectives.

138

vision. The motion to dismiss the cross claims and the counterclaims should, therefore, have been granted.

The order should be reversed, on the law and the facts, and the motion granted, without costs.

STALEY, JR., J. P. (dissenting). I dissent and would affirm the order of Special Term which denied the motion to dismiss the counterclaim and third-party complaint based on my dissenting opinion in *Graney* v. *Graney* (43 A D 2d 207 [decided herewith]).

SWEENEY, KANE and REYNOLDS, JJ., concur with GREEN-BLOTT, J.; STALEY, JR., J. P., dissents and votes to affirm in a separate opinion.

Order reversed, on the law and the facts, and motion granted, without costs.