OPINION OF THE COURT
Chief Judge Breitel.
Plaintiff Walter L. Nolechek, individually and as administrator of the estate of his son Scott, brought this action against defendants Gesuale, Star Sand and Gravel Co., Inc., and others for wrongful death resulting from the son’s motorcycle accident. A counterclaim by defendants Gesuale and Star alleges negligence by the plaintiff father in providing his *336 son, blind in one eye and with impaired vision in another, with a motorcycle. Special Term denied a motion to dismiss the counterclaim. From the Appellate Division’s reversal and dismissal of the counterclaim, one Justice dissenting, defendants appeal. Plaintiff cross-appeals from the Appellate Division’s dismissal of a third-party complaint against James and Paul Neiman, his son’s companion and the companion’s father.
The primary issue is whether an alleged tort-feasor, who may be cast in damages for injuries suffered by an infant child, may seek indemnity or contribution from the injured child’s parent when the child’s injury, and the tort-feasor’s consequent tort liability, resulted from the parent’s negligent entrusting of a dangerous instrument to the child.
The order of the Appellate Division should be modified to reinstate the counterclaim. The third-party complaint should stand dismissed. A minor child has no cause of action against his parent for negligent supervision in general, or for negligently entrusting him with a dangerous instrument in particular. There is, however, a duty by a parent to protect third parties from harm resulting from an infant child’s improvident use of a dangerous instrument, at least, and perhaps especially, when the parent is aware of and capable of controlling its use (e.g., Lalomia v Bankers & Shippers Ins. Co., 35 AD2d 114, 117, affd on opn at App Div 31 NY2d 830; Carmona v Padilla, 4 AD2d 181, 183, affd 4 NY2d 767; see Restatement, Torts 2d, § 316; Prosser, Torts [4th ed], pp 872-873). Since defendants in this action stand to be harmed by the plaintiff father’s alleged breach of duty, namely, they may be cast in damages for the son’s death, the counterclaim against the father was improperly dismissed by the Appellate Division.
The complaint alleges that defendants Gesuale and Star, owners or lessees of property abutting Lawrence Road in Smithtown, were engaged in the business of mining sand and gravel. Lawrence Road was used by these defendants to transport the mined sand and gravel. Owners of adjacent properties, also named as defendants, had permitted on their property construction of concrete pillars supporting steel beams. From these beams, Gesuale and Star suspended a one-inch steel cable to close off the road. The cable, it is conceded, was in place "for a long time prior to” the date of the fatal accident.
*337 On September 30, 1973, Scott Nolechek, 16 years old, and a friend, James Neiman, were riding motorcycles on Lawrence Road. Young Nolechek, as noted, was blind in one eye, had impaired vision in the other eye, and his long distance vision was uncorrectable. He did not possess, and had never applied for, an operator’s license of any type. Yet, his father had purchased a motorcycle for him. The motorcycle had not been registered, nor had it been inspected. Scott Nolechek, riding his friend’s motorcycle, for they had switched motorcycles just before the accident, was killed when he rode into the suspended steel cable.
The father brought this action against Gesuale and Star, against the property owners who had permitted construction of the concrete pillars, and against the town and its superintendent of highways. It was alleged that all parties were negligent in permitting a dangerous condition to exist without any warnings or safeguards. Defendants Gesuale and Star counterclaimed, alleging negligence by the father in providing his vision-impaired son with a motorcycle. Plaintiff responded by interposing a third-party complaint against James and Paul Neiman, his son’s companion and the companion’s father, alleging that due to the switch in motorcycles just before the accident, it was they who had provided young Nolechek with the motorcycle on which he was killed. The Neimans, third-party defendants, moved to dismiss both the counterclaim and the third-party complaint, and Special Term denied the motion. On appeal by the Neimans, the Appellate Division reversed and dismissed the counterclaim and the third-party complaint. From this order, defendants Gesuale and Star appeal. Plaintiff Nolechek also appeals, alleging error in dismissal of the third-party claim.
In Holodook v Spencer (36 NY2d 35, 51), it was held that an infant child has no cause of action against his parent for inadequate supervision. Defendants, arguing that a motorcycle is a "dangerous instrument” in the hands of a 16-year-old boy with impaired vision, would carve an exception to the Holodook rule. But deciding when to permit a minor to Use a "dangerous instrument”, whether it be a motorcycle, a bow and arrow, a knife, a hammer, or even a pencil, is as much an element of parental supervision as is the decision to monitor a child’s play activity more or less closely (compare id., pp 41-42; see, also, Seeberger v Le Gare, 48 AD2d 994, 995). The proposed "dangerous instrument” exception to the Holodook *338 rule is, therefore, neither analytically persuasive nor practically sound.
The thrust of the holding in Holodook is that parents are in the best position to determine how much supervision is right for their children (see 36 NY2d, esp pp 49-51, supra). When children are young, the decisions may involve the extent to which they will be permitted to stray from the immediate physical presence of their parents; when children are older, the decisions are more varied. Children might, at various points in their development, be permitted, and properly so, to use bicycles, lawn mowers, power tools, motorcycles, or automobiles, all of which are, in some contingencies, "dangerous instruments”.
The guiding principles, however, remain the same: "The duty to supervise a child in his daily activities has as its objective the fostering of physical, emotional and intellectual development, and is one whose enforcement can depend only on love. Each child is different, as is each parent * * * For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child” (Holodook v Spencer, 43 AD2d 129, 135 [Greenblott, J.], quoted at 36 NY2d 35, 50, supra). All the more, when a "dangerous instrument” or a sometimes dangerous instrument may be entrusted to a minor child is a significant discretionary decision in the proper exercise of this parental right.
Moreover, the practical consequences of permitting a child to recover on the "dangerous instrument” theory could be serious and unfortunate. One need only imagine young Nolechek riding his motorcycle on the family’s own property, and encountering a ditch or an obscured rock. It would be unjust to permit one of Nolechek’s parents, either individually or as administrator of the estate, to hold the other liable in a wrongful death action for entrusting the boy with a dangerous instrument. Recovery in such an instance might result in unwarranted benefit to both parents at the expense of their homeowner’s insurance carrier.
By contrast, it is well-established law that a parent owes a duty to third parties to shield them from an infant child’s improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use (see, e.g., Lalomia v Bankers & Shippers Ins. Co., *339 35 AD2d 114, 117, affd on opn at App Div 31 NY2d 830, supra; Carmona v Padilla, 4 AD2d 181, 183, affd 4 NY2d 767, supra; Lichtenthal v Gawoski, 44 AD2d 771, 772; Zuckerberg v Munzer, 277 App Div 1061; Agnesini v Olsen, 277 App Div 1006). This is not because parents are obliged to raise their children in any particular way; it is because however the children are raised, there must be respect for the hazards created for third parties. Parents are permitted to delegate to their children the decision to participate in dangerous activities, but they are not absolved from liability for harm incurred by third parties when the parents as adults unreasonably, with respect to such third parties, permit their children to use dangerous instruments.
To be sure, the harm to third parties in this case is not the direct, physical injury ordinarily caused by dangerous instruments. Instead, involved is financial harm resulting from potential liability of a "concurrent” tort-feasor for the child’s death while using the dangerous instrument. But this is harm nevertheless, and harm for which a parent should be responsible if permitting his child to use the dangerous instrument was indeed negligent. It matters not that the parent would not be liable to his child in an action for personal injuries; the financial harm suffered by the third party results from a legally cognizable breach of duty different in kind from any moral breach of duty to the child. The situation is analogous to the workmen’s compensation situation where a third-party tort-feasor may implead for contribution or indemnity the employer of an injured employee, despite the employee’s inability to recover from the employer directly (see, e.g., Dole v Dow Chem. Co., 30 NY2d 143, 152; but cf. Holodook v Spencer, 43 AD2d 129, 137, supra).
Emphasized must be the duty that creates the liability. Not involved is a parental duty to prevent children from injuring themselves by use of dangerous instruments. Such a legal duty has never been recognized in this State, and certainly this case offers no need to do so. Indeed, because the decision to permit a child to use such instruments is an element of parental supervision, such a duty was implicitly rejected in the Holodook case. Analytically separate, well established, and key to this case is the duty owed by parents to third parties to control their children’s use of dangerous instruments to avoid harm to third parties (Lichtenthal v Gawoski, 44 AD2d 771, 772, supra; cf. Holodook v Spencer, 36 NY2d 35, 45, supra).
*340 Of course, it was established in the Holodook case that even third-party tort-feasors are not entitled to contribution from parents for liability resulting in part from negligent supervision of children (Holodook v Spencer, 36 NY2d 35, 51, supra). When dangerous instruments are involved, however, the considerations are different.
Negligent supervision of children, in general, creates no direct, unreasonable hazard to third parties. Absent injury to the child himself, and consequent tort liability of third parties, negligent supervision creates no substantial risk to third parties. Any duty to third parties would therefore, as noted in the Holodook opinion, be dependent on the nonexistent duty to the child.
When a parent has negligently permitted an infant child to use a dangerous instrument, however, there has been a breach of an established duty to third persons who may be harmed. That the harm may not, in a particular case, be a direct personal injury should not absolve the parent from liability. A dangerous instrument in the hands of an infant child may foreseeably cause various types of harm: personal injury, property damage, or, as in this case, exposure to tort liability. The parent’s duty, unlike the duty of adequate supervision not legally cognizable in tort, is not a duty owed the children. It is a duty to protect third parties from the foreseeable harm that results from the children’s improvident use of dangerous instruments, to the extent that such use is subject to parental control. It may not be concluded, as a matter of law, that the risk of a third party’s tort liability to an injured child is not a foreseeable risk to such third parties when a parent has negligently entrusted the child with a dangerous instrument. As has been said, now in classic terms, "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye” (Munsey v Webb, 231 US 150, 156).
It might be argued that permitting a third-party tort-feasor to counterclaim against a parent will disrupt family harmony or dissuade parents from instituting action against the tortfeasor on the child’s behalf. This argument in its generality was rejected implicitly in Gelbman v Gelbman (23 NY2d 434, 438-439), where immunity for nonwillful torts between parent and infant child was abolished. If considerations of family harmony and vigorous prosecution of lawsuits by children *341 were paramount, it would make no sense to permit infant children to sue their parents under any circumstances. But that is not how the law has developed.
Of course, in the particular contexts presented in the Holodook case, considerations of intrafamily relations were given greater prominence (see Holodook v Spencer, 36 NY2d 35, 46-49, supra). But that was because in the Holodook case, the duty suggested, explored, and rejected by the court was one running only from parent to child. Third-party rights were at issue only incidentally. By contrast, when dangerous instruments are involved with a third party’s conduct providing a concurrent condition or cause of the harm incurred, the duty is one running only from the parent to third parties. Intrafamilial considerations must therefore be subordinated, to some extent, to the other policy interests involved.
The sound rule of the Holodook case survives only if accompanied by sound exceptions. A parent who entrusts an infant child with a dangerous instrument creates a danger to all society. It would be repulsive to permit, under the guise of protecting intrafamily relations, such a parent to escape all liability to a "concurrent” tort-feasor who suffers financial harm as a consequence of the child’s inappropriate use of the dangerous instrument and resulting injury.
Moreover, even when it is most significant, the potential harm that could result from permitting counterclaims or third-party claims by tort-feasors against parents is somewhat speculative (cf. Holodook v Spencer, 36 NY2d 35, 52-53, supra [Jasen, J., dissenting]). (Finally, in this case, although obviously not decisive, since the infant child is already dead, no further strain on family relations could result from permitting assertion of the counterclaim.)
Although the counterclaim should be reinstated, the third-party claim by plaintiff against the Neimans should stand dismissed. The claim that the Neimans were negligent in providing young Nolechek with the motorcycle he was riding at the time of the fatal accident provides no basis for liability. There is no reason to believe that the decision of the two boys to exchange motorcycles temporarily made any more probable, or any less probable, the occurrence of the accident. Hence, the exchange was not a proximate cause of the accident.
The equities in this case are apparent. Young Nolechek’s father permitted his 16-year-old son, blind in one eye, to ride a *342 motorcycle. It would be repulsive to permit the parent, to recover from a third party guilty of "concurrent” negligence for the death of his child while preventing the third party from counterclaiming for contribution against the parent. As demonstrated, the principles properly analyzed and applied do not permit such a result.
Accordingly, the order of the Appellate Division should be modified to reinstate the counterclaim, with costs to defendants-appellants against plaintiff-respondent Nolechek, and otherwise affirmed, with costs on the third-party claim to respondents Neiman against appellant Nolechek.