OPINION OF THE COURT
William L. Underwood, Jr., J.
This case concerns the liability, if any, of the defendant parents to their injured son, the plaintiff, when defendants’ older son put the family automobile in motion and it rolled over plaintiff.
The nonjury testimony reveals the following.
Police Officer Gerard Grant was the first witness and he testified that he reported to an accident at defendants’ house on September 17, 1974, at approximately 5:55 p.m., and he saw an automobile that was parked in the middle of the street. He ascertained that defendant, Salvatore Piazzolla, owned the automobile.
Grant saw plaintiff, who was 18 months old at this time, injured and lying on the sidewalk. Although Officer Grant did not see the automobile roll into the street, he ascer *582 tained from defendant, Lucy Piazzolla, that her son, John, who was three years old at this time, set the automobile in motion.
Gail Bellotti testified that she lives across the street from defendants and that she was in her kitchen when “I heard a lady scream”. She saw defendants’ automobile in the street. She also testified “that the children (defendants — author) played in the car * * * like driving the wheel * * * They were just in the car, you would hear a horn beep or something”. She saw defendants’ children in the automobile three or four times in the past when defendants were home. She concluded by testifying that the defendants’ “usual procedure” was to leave the automobile in the driveway with the windows down and the doors unlocked.
Eugene Langan, who lives across the street from defendants, prepared a handwritten statement which was introduced into evidence only as to what he would have testified to had he been called as a witness and not as to its veracity. He stated that the defendants’ automobile had once before rolled down the driveway and that defendants “used to leave their cars in the driveway, unlocked and with the windows open and the children used to play in them. The Piazzolla children still to this day play in the cars in the driveway”.
Carol Tavitian testified that she lives across the street from defendants and that she was on the sidewalk across the street from defendants’ house when the incident happened. She saw defendants’ son John in the automobile and that the automobile had been parked in the driveway by the garage. Plaintiff had “toddled over” and sat down behind the automobile. The automobile then rolled down the driveway and hit plaintiff. She was the lady who “screamed”.
Plaintiff called defendant Lucy Piazzolla and also read from a portion of her deposition upon oral examination. She testified that she had taken some of her five children to Belmont Park on September 17, 1974, and they returned home in the early afternoon. She pulled up into the driveway when she came home, applied the emergency brake and put the automobile in park. She had experienced no *583 problem with the brakes that day and the automobile was in good mechanical operating condition.
After Mrs. Piazzolla and the children arrived at home, the children were on the patio, and Mrs. Piazzolla went in the house to prepare supper. She continued that after supper, the children were out on the patio for about 45 minutes. The patio was on the side of the house and the gate was closed. John and plaintiff, the youngest Piazzolla child, were on the patio, with the gate locked. “I locked my gate for the baby there, and some of the older kids, one of their friends opened the gate and they must have wandered off to the front.” During the hour prior to the accident, Mrs. Piazzolla did not remember looking outside, because her younger children were being watched by the older children and their playmates. She also stated that the family car had rolled down the same driveway on a prior occasion.
Portions of the deposition upon oral examination of Mrs. Piazzolla were read and she stated that neither plaintiff John, nor any of her other children ever played in the automobile. She stated that John did not have permission to go in the automobile. She also stated that the windows of the automobile were rolled down and the doors were unlocked on the day of the incident.
Mrs. Piazzolla candidly testified on direct examination at the trial, contrary to her deposition, that she caught her children in the automobile several times and chased them out. She testified that she caught her son John in the automobile a couple of times and chased him out, telling him not to play in the automobile. She also stated that she never gave any of her children the right to go and play in the automobile. She concluded that her son John was born “legally blind”.
A portion of defendant Salvatore Piazzolla’s deposition upon oral examination was read at trial, wherein he testified that he never allowed the children to operate the steering wheel of the automobile and never bought them a play steering wheel. He also stated that his automobile was parked in the driveway and it “rolled down the hill” once before this incident.
*584 Defendants’ sole witness was Peter McLoughlin, an accident investigator, who testified he spoke to Gail Bellotti and Eugene Langan, on September 30, 1981, at their homes. He identified himself, explained that he was investigating the accident at the Piazzolla home and wanted to ask some questions. He asked each of them if they were aware of the children’s play habits. Mrs. Bellotti and Mr. Langan told him that they were not aware of the Piazzolla children’s play habits.
Plaintiff seeks to support his position on the far-reaching case of Nolechek v Gesuale (46 NY2d 332). Defendants counter that they did not negligently entrust a dangerous instrument to their son John, and as a consequence, are not liable to plaintiff. In other words, they contend that “there was no entrustment or giving of the car by an affirmative or positive act of the parents” within principles set forth in Nolechek.
Several principles of the lengthy decision in Nolechek should be mentioned. The court stated: “There is * * * a duty by a parent to protect third parties from harm resulting from an infant child’s improvident use of a dangerous instrument, at least, and perhaps especially, when the parent is aware of and capable of controlling its use” (46 NY2d, at p 336; emphasis added).
In other words, the court remarked: “it is well-established law that a parent owes a duty to third parties to shield them from an infant child’s improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use” (46 NY2d, at p 338; emphasis added).
The court further commented: “It is a duty to protect third parties from the foreseeable harm that results from the children’s improvident use of dangerous instruments, to the extent that such use is subject to parental control” (46 NY2d, at p 340; emphasis added).
The court also stated: “It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye’ ” (46 NY2d, at p 340).
*585 Judge Fuchsberg, in a concurring opinion, sought to return to the simple and fundamental principle “which in effect would permit each parent-child case to be decided by answering the broad question at the heart of negligence law: What would an ordinarily reasonable and prudent person — taking into account the parent-child relationship — have done in similar circumstances?” (46 NY2d, at p 346.)
Plaintiff also relies on cases where children have caused injuries using their parents’ guns (see, e.g., Kuchlik v Feuer, 239 App Div 338, affd 264 NY 542; Sullivan v O’Ryan, 206 Misc 212; Masone v Gianotti, 54 AD2d 269; Lichtenthal v Gawoski, 44 AD2d 771; cf. Napiearlski v Pickering, 278 App Div 456, mot for lv to app den 303 NY 1014; Ship v Fridenberg, 132 App Div 782).
The court has carefully reviewed the testimony and the principles enunciated in the cited cases and determines that defendants in the second action are liable to plaintiff in that they negligently entrusted a dangerous instrument to their son John, or that they permitted John to have access to the dangerous instrument thereby causing injury to plaintiff.
Defendants, of course, oppose this holding and counter that “for plaintiff to prevail, he must show that one or both of the parents gave permission or consent to the infant plaintiff (should be infant son, John — author) to go in the car, play in the car, or use the car. This has not and cannot be shown. Plaintiff alleges a conscious and affirmative act by the defendants, that of entrusting the car to the infant, John. In fact, neither parent ever entrusted the car to the minor son, John, nor ever gave him permission to go in the car. The fact that on occasion John may have snuck into the car, and when found, been chased out, does not make out a case of entrustment.”
However, in the Nolechek case (46 NY2d 332, supra), the court stated several times that a parent owes a duty to third parties to protect them from an infant child’s improvident use of a dangerous instrument especially when the parent is “aware of and capable of controlling its use” or when “such use is subject to parental control”.
*586 In this case, defendants were “aware of and capable of controlling” their automobile so that John would not get into it and thereby shielding a third party from an injury. There was testimony by plaintiff’s witnesses, including defendant, Lucy Piazzolla, that her children played in the automobile at least three or four times in the past. There was also testimony that the automobile had rolled down the driveway once before. Finally, there was testimony that the windows of the automobile were rolled down and the doors were unlocked on the date in question.
Under the facts presented, defendants, by their own acts, were capable of controlling the use of the automobile or preventing it from becoming accessible to John (Nolechek v Gesuale, supra; Gordon v Harris, 86 AD2d 948; Masone v Gianotti, supra; Lichtenthal v Gawoski, supra; Kuchlik v Feuer, supra; see, also, Pietrzak v McGrath, 85 AD2d 720, 722).