OPINION OF THE COURT
Jan H. Plumadore, J.
Vehicle and Traffic Law § 509 (4) imposes liability for unlicensed operation on the operator and on any "person [who] shall knowingly authorize or permit a motor vehicle owned by him or in his charge to be operated in violation of subdivisions one, two or three of this section.” (It is undisputed that title to this motorcycle had passed from the dealer, Sportline, to defendant Winner at or before he took delivery of it, i.e., before he operated it on the public highway.)
Sportline was under no duty to make inquiry of defendant Winner’s companion, the girlfriend who accompanied him when he arrived to pick up the motorcycle but did not exit the automobile, whether she in fact possessed a motorcycle license as represented by Mr. Winner, nor is there any legislative presumption permitted by the failure to inquire (People v Crean, 206 Misc 311, 312).
Sportline thus cannot be liable under this section. The fact that it violated its own policy of not selling to unlicensed persons does not change this result inasmuch as there is no statutory prohibition on such persons owning motorcycles (or cars) and it has not bound itself to a higher standard of care than any other former owner is required to exercise. In these statutory regards see 7 NY Jur 2d, Automobiles, § 105.
Dillon v Suburban Motors (166 Cal App 3d 233, 212 Cal Rptr 360) upon which plaintiffs seek to rely is distinguishable. The dealer there knew or should have known that the infant driver and his mother had no valid California licenses. They exhibited Missouri licenses which would under California law no longer be valid there (California). The dealership also retained title at time of delivery, the very point on which the court distinguished Dillon. Though not determinative, our Mr. Winner had an Oklahoma motorcycle license which was not valid in New York during the time frame at issue and also, like the infant tort-feasor in Dillon, had not attempted to obtain a valid New York license and had had no formal instruction.
*73 The matter of common-law negligent entrustment is more difficult. There is no allegation that Mr. Winner was legally blind, intoxicated or possessed of an extensive vehicle violation record of which Sportline was or should have been aware. However, Sportline knew he did not have a license and was aware of his youth (age 20 at the time of purchase, which was shortly before the accident).
The question is complicated somewhat by the fact that a motorcycle may more readily be found to be a dangerous instrumentality in the hands of one not competent in its use than an automobile, and if it is a provider’s duty is (apparently) increased beyond that attributable to mere negligent entrustment of a motor vehicle (79 NY Jur 2d, Negligence, §§ 71, 74, 75). Much depends on its nature, the circumstances of its use, the knowledge of the provider (79 NY Jur 2d, id., § 70; Costa v Hicks, 98 AD2d 137, 145). Sportline would be hard-pressed to argue that its duty is not heightened in this case over that of an automobile dealer in light of Mr. Cardinale’s September 26, 1991 examination-before-trial testimony that test drive screening is done very carefully and that it is "very, very reluctant to let any motorcycle go out on a test drive [because t]he degree of exposure to mishap is much, much greater than say in the automotive business. You can’t fall off a car.” While the quoted language was obviously directed towards a dealership’s liability to a driver and arguably a passenger, it applies to uninvolved third parties as well (Costa v Hicks, supra).
Costa (supra), as did its ancestor Nolechek v Gesuale (46 NY2d 332), involved the negligent entrustment of motorcycles (dangerous instrumentalities) by parents to their minor children. The ultimate inquiry in such a case is whether the negligent entrustment, if it is such, was itself a proximate cause of a plaintiff’s injuries (Costa v Hicks, supra; Annotation, Negligent Entrustment of Motor Vehicle to Unlicensed Driver, 55 ALR4th 1100, 1126, § 11 [a]). A case which particularly illuminated the role of negligent entrustment in a proximate cause determination was Kahlenberg v Goldstein (290 Md 477, 431 A2d 76). The Court of Appeals of Maryland stated, when a father gave his minor son an automobile:
"Liability is not based upon continued ownership, but upon the negligent entrustment when it operates as a concurrent cause with the negligence of the entrustee * * *
"The negligence of the supplier consists of furnishing the *74 chattel with the requisite knowledge. This sets in motion one chain of causation which may or may not in fact result in injury. The other chain of causation involves the conduct of the immediate tortfeasor. If physical harm results to one within the class of foreseeable plaintiffs, as a result of the use of the chattel by the entrustee in a manner, which, because of the youth, inexperience or otherwise of the entrustee, the supplier knew or had reason to know was a likely use and which would involve an unreasonable risk of physical harm, the two chains of causation converge and liability is on the supplier, for his own negligence” (290 Md, supra, at 488-490, 431 A2d, supra, at 83-84).
In the instant case, the accident — Mr. Winner driving through codefendant Golub’s front door after revving his engine in a standing position — occurred shortly after he picked up the motorcycle.
New York courts have addressed the question of negligent entrustment by donors. In Golembe v Blumberg (262 App Div 759) the Second Department, citing Restatement of Torts § 390 (as does Kahlenberg v Goldstein, 290 Md, supra, at 488, 431 A2d, supra, at 83) held that there is a valid cause of action when a father purchases an automobile for his adult epileptic son and that even an automobile may qualify as a dangerous instrument "in the hands of a person physically incompetent to handle it” (emphasis supplied).
The other old New York case frequently cited in this area (e.g., 8 NY Jur 2d, Automobiles, § 694; Kahlenberg v Goldstein, 290 Md, supra, at 488, 431 A2d, supra, at 83), Bugle v McMahon (265 App Div 830) is hardly dispositive. The Second Department upheld the dismissal of a cause of action, with leave to replead, which alleged no causal connection between the father’s furnishing the automobile to a known reckless son and the accident. It also held that furnishing the automobile or funds therefor "is consistent with liability and non-liability” (supra, at 831).
More recent cases (Nolechek v Gesuale, supra; Costa v Hicks, supra) have affirmed the potential liability of parents for negligent entrustment where ownership rests with the child (or not). Negligent entrustment to one known or should have been to be incompetent is a recognized cause of action as well (Golembe v Blumberg, supra; see also, 8 NY Jur 2d, Automobiles, § 700). There is no New York case this court is aware of which holds as a matter of law that sellers, under circum *75 stances such as ours or otherwise, cannot be held liable. This cause of action is possible in other jurisdictions (Annotation, Motor Vehicle Donor-Liability, 22 ALR4th 738, § 2 [b]; 55 ALR4th 1100, id., § 10 [e]) though it frequently fails for lack of proof (id.).
That might well have been the result herein if this matter were allowed to proceed to trial. Absence of a license is not presumptive evidence of negligence (8 NY Jur 2d, id., § 752), and there is serious question here whether there was any evidence of Mr. Winner’s incompetence demonstrated or demonstrable to Sportline. There are other factors on which it appears the proof would be deficient as well (see generally, 55 ALR4th, id, § 10): whether Sportline knew Mr. Winner’s operation of the motorcycle would be dangerous (id., § 10 [b]); whether Sportline knew that he would even operate the vehicle before obtaining a license (id., § 10 [c]); whether Sport-line had a duty to inquire as to Mr. Winner’s or his purportedly licensed transporter’s background and competency to drive (id., § 10 [d]) (as opposed to whether she even possessed a license, which was dealt with supra) (see also, id., § 7; Costa v Hicks, supra, at 145).
These, as well as the question of proximate cause if proof is allowed to proceed to that point, are generally matters for the jury.
Some post-Nolechek cases (Larsen v Heitmann, 133 AD2d 533; Rosenfeld v Tisi, 151 AD2d 739; Camillone v Popham, 157 AD2d 816) relied solely on a lack of retained ownership or control as summarily dispositive of a negligent entrustment cause of action. One pre-Nolechek (Golembe v Blumberg, supra) at least did not. Sportline legally had limited control over this motorcycle once it was lawfully sold to Mr. Winner,* and even less when, now titled, he came to claim it. It is at that point— Winner’s arrival and subsequent departure on March 19, 1990 —that its liability must be tested.
It is on this very point that Sportline’s motion as to the common-law negligent entrustment theory must be granted as well. In the face of Sportline’s officer’s (Cardinale’s) evidence concerning what transpired when Mr. Winner arrived to *76 claim his motorcycle, i.e., the representations made, the actions taken referred to supra, plaintiffs and the codefendant have offered nothing sufficient to refute it. While it is true Mr. Winner has not been deposed since Sportline was made a defendant and his whereabouts are currently unknown, he was deposed earlier and his girlfriend who accompanied him to Sportline was apparently available throughout this case. In light of Sportline’s lack of a duty to inquire of her as to her license status, the uncontradicted evidence that Mr. Cardinale did not see Mr. Winner leave and did not authorize him to do so (55 ALR4th § 10 [c]; see also, People v Borg, 137 Misc 2d 516), Sportline is entitled to judgment on this theory as well.
Sportline’s motion for summary judgment is granted as to both theories of liability: Vehicle and Traffic Law § 509 (4) and common-law negligent entrustment.

 Any claim predicated on the period Sportline held the motorcycle for Mr. Winner between the time the deal was struck and the day he arrived with the title and plates would fail due to plaintiffs’ (and Golub’s) inability to prove proximate cause or knowledge by Sportline then that Mr. Winner would operate the vehicle in his unlicensed condition.