■ ARPI KOULAJIAN, Appellant, v TAMARA SMITH et al., Respondents. [954 NYS2d 871]—

Contrary to plaintiff's contention, there is no evidence in the record to support her theory that either of defendants was pulling the suitcase that plaintiff tripped over. Although defendants assert that the child was in control of the suitcase, plaintiff insists that the child was not. Accordingly, she could not prove a claim for negligent supervision, as such a cause of action is dependent on an allegation that a child improvidently used or operated a dangerous instrument (see Rios v Smith, 95 NY2d 647, 652-653 [2001]). In light of this, the dissent's argument concerning whether the suitcase was a dangerous instrument is wholly academic.

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Mazzarelli, Catterson and DeGrasse, JJ.

Tom, J.P., and Saxe, J., dissent in a memorandum by Saxe, J., as follows: I agree with the majority that plaintiff has not presented any evidence from which it could be found that one of the defendant parents, rather than their two year old, was handling the suitcase that caused plaintiff's fall. However, I disagree with the dismissal of the claim of negligence against the parents. In particular, I disagree with the motion court's implicit conclusion that entrusting a two year old with a medium-sized, wheeled suitcase on a Manhattan sidewalk does not, as a matter of law, create a dangerous instrumentality. Although plaintiff challenged the order on appeal with the contention that it was not alleging negligent supervision, and that an issue of fact was presented as to who was actually handling the suitcase, I would deny dismissal, finding an issue of fact as to whether defendant parents breached their duty to third parties by creating an unreasonable risk of harm to others when they placed a wheeled suitcase under the control of their two year old on a public sidewalk.

Plaintiff alleges that at around noon on Saturday, October 3, 2009, she was walking on the sidewalk of York Avenue between 78th Street and 79th Street in Manhattan when she was struck from behind, and caused to fall, by what turned out to be a wheeled suitcase that hit her in the back of her leg. Plaintiff did not see the suitcase until after she fell, and she did not know who had been handling it. According to defendants' deposition

testimony, their two-year-old child had been pulling the suitcase at the time of the incident, although neither parent saw how it occurred. The child's father, David Austin, had been walking in front of the child, holding her right hand with his left hand, while she pulled the suitcase behind her, with its handle fully extended. The child's mother was behind them, but by the time she turned the corner onto York Avenue from 78th Street, plaintiff was already falling, and the suitcase was on the ground, no longer held by anyone.

Defendants' summary judgment motion was based on the assertion that it was their child who was pulling the suitcase, and that the child herself, being two years old, could not be found negligent (*see Verni v Johnson*, 295 NY 436, 438 [1946]), while a parent cannot be held liable for lack of supervision of a child unless the accident was clearly foreseeable from the child's improvident use or operation of a dangerous instrument that was subject to the parent's control (*see Rios v Smith*, 95 NY2d 647, 652-653 [2001]). They asserted that a suitcase cannot be a dangerous instrument.

Plaintiff countered that there was a question of fact as to who was pulling (or pushing) the suitcase at the time she was struck, but that it would have been impossible for a child the size of defendants' daughter—who was no taller than the suitcase itself, and weighed less than 30 pounds—to handle it.

The majority holds that there is no viable claim against defendants, as there is no evidence supporting plaintiff's theory that one of the defendants handled the suitcase. I disagree with that broad holding, and submit that the evidence showing that defendants' child was handling the suitcase at the time of the accident may warrant holding the parents liable if they entrusted their child with an object that, under those particular circumstances, created an unreasonable risk of harm to others.

In *Nolechek v Gesuale* (46 NY2d 332 [1978]) and *Rios v Smith* (95 NY2d 647 [2001]), the Court of Appeals upheld negligence claims against parents who provided their minor children with motorized vehicles when they were aware that others would be endangered by their use. The defendant father in *Nolechek* had given a motorcycle to his 16-year-old son who was blind in one eye and had impaired vision in the other (46 NY2d at 337), and in doing so may have breached his "duty to protect third parties from the foreseeable harm that results from the children's improvident use of dangerous instruments, to the extent that such use is subject to parental control" (*id.* at 340). In *Rios*, the 17-year-old plaintiff was injured when riding as a passenger on an ATV supplied to the 16-year-old driver by his friend, the defend-

ant's son (95 NY2d at 650). The Court held that the evidence was sufficient to support a fact issue as to whether the father had "created an unreasonable risk of harm to plaintiff by negligently entrusting the ATVs to his son" (*id.* at 653).

While those cases concerned instrumentalities that are generally agreed to be dangerous, the law does not limit the possibility of parental liability to instrumentalities which by their nature alone are dangerous.

Importantly, the PJI does not frame the issue of negligent entrustment of an instrumentality to a child in terms of "dangerous instruments." Rather, PJI 2:260 states, "A parent is not responsible for the acts of (his, her) child, but is responsible for the failure to use reasonable care in entrusting to or leaving in the possession of the child an instrument which, *in view of the nature of the instrument, the age, intelligence, and disposition of the child and (his, her) prior experience with such an instrument,* constitutes an unreasonable risk of harm to others" (emphasis added). The comment to this instruction further explains that it is not the instrument alone that establishes the danger: "The tort consists of entrusting or permitting the use of an instrument *made dangerous by the age, intelligence, infirmity, disposition, or training of the user* which causes injury to a third party" (1B NY PJI3d 2:260 at 723 [2012] [emphasis added]). As the *Rios* Court explained, "[w]hether a particular object qualifies as a dangerous instrument depends on the nature of the instrument and the facts pertaining to its use, including the particular attributes of the minor using or operating the item" (95 NY2d at 653, citing 45 NY Jur 2d, Domestic Relations § 534, *Craft v Mid Is. Dept. Stores,* 112 AD2d 969, 970 [2d Dept 1985], and *Alessi v Alessi,* 103 AD2d 1023, 1024 [4th Dept 1984]).

There is no question that "items that are commonly used by children, of suitable age in a manner consistent with their intended use, may not, as a matter of law, be classified as dangerous instruments" (*Rios,* 95 NY2d at 653, citing *Sorto v Flores,* 241 AD2d 446, 447 [2d Dept 1997], *Barocas v F.W. Woolworth Co.,* 207 AD2d 145, 148 [1st Dept 1995], and *Santalucia v County of Broome,* 205 AD2d 969, 970-971 [3d Dept 1994], *lv dismissed* 84 NY2d 923 [1994]). However, the cases in which claims of negligent entrustment have been dismissed all concern playthings or items associated with child rearing.

*Sorto* (241 AD2d 446) concerned the parents' entrustment of a bicycle to a 5¹/₂-year-old boy who then collided with a three-year-old girl, injuring her. The Court observed that there was no proof that the bicycle was unsuitable for a boy of his age, height, or weight, nor any proof that he lacked the skills of a

boy his age or that he was riding it improperly or in an inappropriate area (*id.* at 447). Similarly, in *Santalucia* (205 AD2d 969), the parents of a five year old provided with a 16-inch bicycle were held not liable as a matter of law to a plaintiff injured by that child. The Court emphasized that "[r]iding a bicycle has become, practically speaking, a natural stage of every child's development" (*id.* at 970), so as long as there was no evidence that the child lacked the basic skills to ride it alone, the parents could not be said to have breached their duty to third parties. And this Court, in *Barocas* (207 AD2d 145), held that a parent who gave a plastic doll to a child, not knowing that it would have a sharp edge when broken, was not liable, as a matter of law, for negligent supervision based on a theory of entrusting a child with a dangerous instrumentality, since the item in question was not something that the parents had reason to believe unsafe (*id.* at 148).

The case of *Zarilla v Pennachio* (90 AD3d 1040 [2d Dept 2011]) presents some superficial similarities to the present matter. There, a grandmother was struck by a battery-powered tricycle scooter being ridden by her three-year-old grandson, whom she was then supervising. The grandmother sued the child's mother, contending that she had negligently entrusted her child with a dangerous instrument. The Second Department dismissed the negligent entrustment action, stating that "[i]tems that are commonly used by children, of suitable age in a manner consistent with their intended use, may not, as a matter of law, be classified as dangerous instruments" (*id.* at 1040-1041, quoting *Rios*, 95 NY2d at 653).

But, there is an important distinction between *Zarilla* and the present case. In *Zarilla*, the negligent entrustment claim was based on the assertion that the mother had provided her child with a dangerous instrument, when what she had provided was a toy apparently used generally by children of that age. The law that was applied was, therefore, that merely providing the child with a commonly used riding toy could not be said to, in and of itself, breach any duty owed to third parties. However, if there had been a showing that other facts or circumstances, of which the defendant mother was aware, would have warranted her taking additional measures to protect third parties from her child's use of the riding toy, the ruling might have not been the same. For instance, if, hypothetically, the mother in *Zarilla* had been present and had the ability or the obligation to observe that the child was operating the battery-powered scooter wildly or without control, so as to endanger passersby, she could have been liable for negligence. But, in *Zarilla*, it was the plaintiff

grandmother who was supervising the child at the time, so the grandmother could make no such claim against the mother.

Providing a child with a standard toy *may* support a negligence claim against the parent where there is more to the claim than merely giving the child a toy to play with. As the Court said in *Alessi* (103 AD2d 1023), where a six year old "launched" a toy airplane and struck his four-year-old brother in the eye, "the question of whether the toy airplane is a dangerous instrument is a question of fact to be determined at trial based upon the object's size, weight, shape and operating potential, as well as the age, intelligence, disposition and prior experience of the infant defendant" (*id.* at 1023-1024).

It is not that the parents here provided their child with an object that by its nature constitutes a dangerous instrument. Of course, a wheeled suitcase is not normally a dangerous instrument. But the critical inquiry does not focus solely on the instrumentality itself. It asks whether the parent "fail[ed] to use reasonable care in entrusting to . . . the child an instrument which, *in view of the nature of the instrument, the age, intelligence, and disposition of the child and* (his, her) *prior experience with such an instrument*," creates an unreasonable risk of harm to others (PJI 2:260 [emphasis added]). However innocuous a wheeled suitcase might seem generally when handled by adults or larger and older children, when it is the same size as the two-year-old child wielding it, the potential hazards it could create may warrant imposing on the parent supervising the child a greater degree of care and supervision, to ensure that the object does not unwittingly turn into a hazardous object that may foreseeably cause harm to nearby pedestrians. Such an object, in the hands of a possibly heedless two year old wielding it without parental oversight on a Manhattan sidewalk, could turn into a hazard, creating "an unreasonable risk of harm to others" (*id.*).

Parents' duty to control their minor children is expressed in the Restatement (Second) of Torts § 316 as follows:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from . . . so conducting itself as to create an unreasonable risk of bodily harm to [others], if the parent

"(a) knows or has reason to know that he has the ability to control his child, and

"(b) knows or should know of the necessity and opportunity for exercising such control." Particularly applicable here is one of the comments to the section, which explains that "[t]he child may be so young as to be incapable of negligence, but this does

not absolve the parent from the performance of his duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it" (*id.*, Comment *c*).

The facts as presented in the record on appeal are sufficient to permit the finding that defendant parents acted negligently by first entrusting a small two year old with a wheeled suitcase as big as she was, and then failing to take any steps to prevent her from wielding that suitcase in a manner that created an unreasonable risk of bodily harm to other pedestrians sharing the sidewalk with them. In my view, this is sufficient to preclude dismissal of the action.