Catherine WOODS, an infant, by her Guardian ad Litem, Robert Woods, and Robert Woods, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 19770.

United States District Court
E. D. New York.

Aug. 11, 1961.

842

Joseph La Gattuta, New York City, by John E. Dolan, Jr., Patchogue, N. Y., of counsel, for plaintiffs.

Joseph P. Hoey, Jr., U. S. Atty., by John H. Hammer, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

RAYFIEL, District Judge.

The plaintiff, injured by a Post Office Department truck owned by the defendant and operated by one of its employees in the regular course of his employment, commenced this action under the Federal Tort Claims Act (Title 28 U.S.Code §§ 1346(b) and 2671) to recover damages therefor.

The accident occurred on Huron Street, in the Town of Terryville, Suffolk County, New York, on February 19, 1959. Huron Street runs north and south and is dead-end, that is to say, closed, at its northerly terminus.

The infant plaintiff resided with her parents at No. 7 Huron Street, one of six one-family dwellings on the west side of the street, north of Dillon Avenue. On the east side of the street are seven similar dwellings. Immediately adjacent to the roadbed of Huron Street, and in front of each of said dwellings, is a rural-type postbox.

Thomas Martagas, the driver of the truck, had delivered mail to the occupants of said dwellings for some time prior to the accident. It was his practice, after entering Huron Street north of Dillon Avenue, to proceed in a northerly direction, stopping at each postbox for which he had mail, and depositing the same therein without leaving the truck. When he reached the dead-end he would make a U-turn and then proceed in a southerly direction along the west side of the street, repeating the process.

On the occasion herein involved he reached the postbox in front of No. 8 Huron Street at approximately 12:30 P.M. He brought his truck, which was equipped with hydra-matic transmission, to a virtual but not complete stop, removing his foot from the accelerator pedal, and leaving the car in "drive", with its right front side about six inches from the east side of the roadbed and its right rear side some eighteen inches therefrom. While Martagas was engaged in removing mail from the truck to the postbox at No. 8 the truck, according to his testimony, moved forward about one foot. Martagas stated that after depositing the mail in that postbox he looked at the rear-view mirrors which were attached to and extended outward from both sides of the windshield, and then proceeded to resume his northerly progress to complete his round, when he heard a scream. He brought the truck to a stop, alighted, inspected the area near the front of the truck, saw no one there,

and then turned toward the rear of the vehicle where he observed the infant plaintiff seated on the ground behind the right rear wheel. He lifted her from the ground, and carried her into her home, telling her mother, upon entering, according to her testimony, that his truck had stuck her.

■ Catherine, who was seven years of age at the time, testified at the trial. There was one important conflict between her testimony and that of Martagas. As hereinabove stated, he testified that after depositing mail at No. 8 his truck proceeded to move *forward* toward the dead-end. She stated that the truck *backed up* and struck her. Because of the conflict it becomes necessary to reconstruct the occurrence from the physical facts established at the trial. Martagas stated that he found her seated *behind* the truck. That would appear to support his claim that the truck moved forward. But it should be noted also that he testified that at the time of his almost complete stop to deposit mail at No. 8 his right front wheel was about six inches from the curb and his right rear wheel about eighteen inches therefrom, and that in the course of such deposit of mail the truck moved forward about one foot. That would have put his right front wheel at or beyond the east boundary of the roadway. If, then, the truck had proceeded forward immediately after leaving No. 8 it would have left the roadway and mounted the sidewalk. It may justifiably be assumed, therefore, that Martagas, in order to keep the truck in the roadway, reversed it before proceeding forward. I doubt that he looked at the rear-vision mirror extending from the right front of the truck before proceeding, as he said he did, for if he had he would probably have seen her. He should have known that children of tender years frequently act instinctively. In any event he was negligent in failing to exercise reasonable care and prudence in the operation of the truck, as a result of which Catherine sustained the injuries hereinafter described.

■ I come now to the question of contributory negligence. The plaintiff, of course, has the burden of proving that she was free from contributory negligence. As Judge Lehman said in the case of Camardo v. New York State Rys., 247 N.Y. 111, at page 115, 159 N.E. 879, at page 880, "That rule applies alike where the plaintiff is an adult or an infant. Wendell v. New York Cent. & H. R. R. Co., 91 N.Y. 420; Stone v. Dry Dock, E. B. & B. R. Co., 115 N.Y. 104, 21 N.E. 712; Simkoff v. Lehigh Valley R. Co., 190 N.Y. 256, 83 N.E. 15. The care which may reasonably be expected of an immature child must be measured by a standard which a child may reasonably be expected to attain. A child is .not guilty of contributory negligence if it has exercised the care which may reasonably be expected of a child of similar age and capacity. Thurber v. Harlem Bridge, M. & F. R. Co., 60 N.Y. 236 [326]; Kunz. v. City of Troy, 104 N.Y. 344, 10 N.E. 442, 58 Am.Rep. 508. A child may be of such tender years that it lacks the experience which would enable it to realize the presence of a threatening danger, and the judgment which would enable it to avoid the danger. Since no care or caution may, under such circumstances, be expected of the child, it is incapable of personal negligence. 'At such age the infant is termed non sui juris.' Jacobs v. H. J. Koehler Sporting Goods Co., 208 N.Y. 416, 418, 102 N.E. 519, L.R.A.1917F. 7."

■■ Catherine was four years and ten months old on the date of the accident. Some children of that age have a mental capacity to exercise prudence in the face of danger. Whether Catherine was *sui juris* on the day of the accident is a question of fact. Judge Lehman, in the case of Camarado v. New York State Rys., supra, said at page 118 of 247 N.Y., at page 881 of 159 N.E., "It is difficult to draw distinction between the capacity which a child of four years and ten months may have, and the capacity of a child of five years or five years and two months. There must always be some border line where such distinctions become illusory." Before testifying as to the occurrence on February 19, 1959, Catherine was questioned by the Court at

some length for the purpose of ascertaining the extent of her knowledge and understanding. From the substance and manner of her testimony it is my opinion that on the day of the accident she was lacking such understanding and intelligence as would have enabled her to recognize the danger she faced and take the precautions necessary to avoid it, and, hence, I find that she was *non sui juris* and incapable of contributory negligence.

■ As a result of the accident Catherine sustained the following injuries; (a) a transverse slightly comminuted fracture of the mid-shaft of the tibia, and (b) multiple abrasions and contusions of the right calf. There was a finding, also, of sugar in her urine which, at first, was thought to be of traumatic origin but subsequent examination and tests, which were negative, indicated that the condition, which was transitory, was not occasioned by the accident.

The fractured tibia was treated by close reduction under general anesthesia, and a cast was applied, extending from her toes to her groin. Subsequent examination disclosed that there has been a complete recovery. The function, measurements, range of motion and power of her injured leg are normal.

The infant plaintiff is entitled to compensation in the sum of $3,000 for the injuries sustained by her as a result of defendant's negligence. The plaintiff Robert Woods, her father, paid or incurred the following expenses in connection with her hospitalization, care and treatment for which he is entitled to be compensated:

| | |
|---|---|
| St. Charles Hospital, for her care and treatment, including x-rays, laboratory service, etc. | $ 304.30 |
| Dr. Consoli, for professional services, including surgery and post-operative treatment | 250.00 |
| Dr. Himel, anesthetist | 20.00 |
| Additional x-rays | 47.00 |
| | $621.30 |

■ In my opinion the damages claimed by plaintiff Robert Woods for the loss of companionship of his infant daughter are purely nominal.

Accordingly, judgment is rendered in favor of the plaintiff Catherine Woods in the sum of Three thousand dollars, and in favor of the plaintiff Robert Woods in the sum of $621.30.

Submit within 10 days, on notice, proposed findings of fact, conclusions of law, and judgment in conformity herewith.