R. Wellesley Jarboe et al. *v.* Thomas Edwards et al.

| Superior Court | Fairfield County at Stamford | File No. 5043 |
|---|---|---|

Memorandum filed August 30, 1966

*Cummings & Lockwood,* of Stamford, and *Sibal, Hefferan & Griffin,* of Norwalk, for the plaintiffs.

*Gregory C. Willis,* of Bridgeport, for the defendants.

Leipner, J. The plaintiff James Jarboe, a minor, obtained a verdict at the hands of the jury in the amount of $12,500. The plaintiffs R. Wellesley Jarboe and Frances Jane Jarboe, parents of James Jarboe, were awarded damages of $1391.17 by the jury, which represented the total amount expended for hospital and medical bills on behalf of James. The defendants Thomas and Evelyn Edwards seek to set aside the verdict and move for judgment notwithstanding the verdict in accordance with their motion for a directed verdict, upon which motion the court reserved decision.

The defendants claim that the verdict is contrary to law, that it is against the evidence, and finally that it is excessive. As to the last ground, it does not

appear that the defendants have seriously pressed this claim, and in any event the court finds no merit to this ground—that the award of $12,500 is excessive—in view of the severe and permanent injuries sustained by James Jarboe. As to the claim that the verdict is against the evidence, the court is disposed to hold that the jury, in determining the credibility of the various witnesses, did have adequate evidence before it to render, in accordance with the instructions given by the court, a verdict in favor of the plaintiffs.

The uncontroverted evidence indicates that the plaintiff James Jarboe, on November 3, 1961, was severely burned as the result of the acts of Michael Edwards, the son of the defendants. At the time, James was two and one-half years old, and Michael was four years of age. The Jarboe children—John, four and one-half years old; Paul, three and one-half; and the plaintiff James, two and one-half—played with Michael Edwards almost every day. Their home is on the same street, separated by one other house. On the day in question, about 10 a.m., the Jarboe children went over to the Edwards home. They were in the back yard when Michael came out from his home and handed some matches to one of the Jarboe boys; then he proceeded to put on his coat and took the matches back. The evidence is abundantly clear that Michael then stuffed some papers in the trousers of the plaintiff James and lighted the papers, causing the severe and permanent burns suffered by James Jarboe. The evidence further indicates that through all of the screaming, crying and general noise that took place in the Edwards yard, neither of the defendants knew what had happened. As a matter of fact, the police who were called to the scene, in particular Sergeant Lee Smith, went into the Edwards house and called out several times, but got no response for ten to

fifteen minutes, when Mr. Edwards appeared and said he and Mrs. Edwards had been asleep upstairs. Mrs. Edwards testified they were unavailable from 9:30 a.m. until finally aroused by Sergeant Smith and neither she nor her husband had heard any screaming or yelling or the commotion in the yard.

The court allowed in, as evidence, what it deemed to be the spontaneous utterance of John Jarboe, who was four and one-half years old at the time of the incident. John, upon seeing his younger brother in flames, ran home screaming and crying and blurted out to his mother, Mrs. Jarboe: "Mom, Mom, come quick—Michael stuffed papers in James's trousers and lighted them." In addition to this utterance, there was evidence of one used matchbook and one half-used matchbook, some burnt areas of grass and some burnt papers in the rear of the yard found by the police. Furthermore, John Jarboe testified that Michael had brought the matches from the house and used them to set fire to James.

The jury, in determining the credibility of the witnesses, could readily have accepted Mrs. Jarboe's testimony regarding her discussion with Mrs. Edwards in October, 1961, wherein Mrs. Edwards said: "I don't know what we are going to do about Michael. He is greatly fascinated with fire." Mrs. Jarboe further testified she referred to an article she read about breaking such habits and also suggested that Mrs. Edwards place Michael in front of the kitchen sink and allow him to light a whole box of matches while she stayed there with him; Mrs. Edwards said she would try this in order to break his habit. Mrs. Edwards, on cross-examination, could not remember the above-mentioned conversation. In addition, Mr. Edwards testified he had knowledge that Michael took matches and lighted them. On occasion, sometime before the date in

question, he said he had taken matches away from Michael. Mrs. Edwards also testified that she knew Mr. Edwards had taken matches from Michael.

The plaintiffs' case was presented (1) on the ground that matches are a dangerous instrumentality in the hands of a four-year-old and that the defendants left such available to their child, and (2) that the defendants failed properly to supervise this child with known dangerous propensities for playing with matches, although they knew of the necessity for doing so.

Our Supreme Court has never ruled that matches in the hands of a young child are per se a dangerous instrumentality. In some other jurisdictions, however, the courts have taken the view that fire or matches in the hands of a child create a dangerous situation. See *Gilligan* v. *Butte,* 118 Mont. 350; *Mudrich* v. *Standard Oil Co.,* 153 Ohio St. 31; Prosser, Torts (2d Ed.) § 102, p. 681. In its charge, the court said: "I might say at this time there is no claim in this case that any dangerous instrumentality was entrusted to the Edwards boy." It was apparent that the defendants did not actually put the matches in the hands of their son, but rather that they readily made the matches accessible for Michael. The question whether matches in the hands of a young child of four years were a dangerous instrumentality was a question of fact for the jury to determine.

In the majority of cases on one's responsibility for permitting a child to have a gun or leaving a gun accessible to a child, it has been held that prima facie negligence is established by a showing that the defendant permitted an inexperienced or irresponsible infant to have a dangerous gun or that he left such a gun in a place where he should have foreseen it would come into the hands of a child. Connecticut

is one of the minority of states which have held that merely permitting a minor to have a gun or access thereto does not constitute negligence upon which liability for injuries inflicted by the minor can be predicated. See note, 68 A.L.R.2d 782, and cited cases.

The defendants relied on *Wood* v. *O'Neil,* 90 Conn. 497 (1916). In that case, the parents obtained a nonsuit against the plaintiff, who, as administrator of a young girl, sought a recovery of damages from the parents of a boy who killed the decedent with a shotgun given him by them. The Supreme Court said (p. 500): "Upon an examination of all the evidence, we think the case against the parents amounted to no more than a claim that they were negligent in the eye of the law solely because they put a shotgun into the hands of a boy not quite sixteen years old; a proposition which is manifestly untenable." Since the *Wood* case, fifty years ago, it is noteworthy that our Supreme Court has never made any reference to its holding in any later case. Aside from the factual situation, which is different from the facts in the instant case, it appears that the holding in the *Wood* case in regard to the liability of parents on the point in question is not in accord with the modern weight of authority. The modern trend in many jurisdictions, as put by Prosser, advances the theory that a "parent, for example, like anyone else, may be negligent in entrusting to a child a dangerous instrument such as a gun, or a thing which he has shown a propensity to misuse, such as matches . . . ." Prosser, Torts (2d Ed.) § 102, p. 681.

The second theory advanced by the plaintiffs was the failure of the defendants to supervise their young child, Michael. To the general broad principle that parents at common law are not liable for the torts of their children, an exception has attached in

situations where parents have entrusted a dangerous instrumentality to their children or have failed to restrain their children who they know possess dangerous tendencies. 39 Am. Jur., Parent and Child, § 55; Prosser, op. cit., p. 200.

The modern view is found in Restatement, 2 Torts § 316: "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity of exercising such control." Under comment a, it further states: "While the father as head of the family group is no longer responsible for the actions of all the members of his household or even for those of his minor child, he is responsible for their conduct in so far as he has the ability to control it. The duty is not peculiar to a father. It extends to the mother also in so far as her position as mother gives her an ability to control her child." Furthermore, the modern view holds that the very youth of the child is likely to give the parent more effective ability to control the actions of the child and to make it more often necessary to exercise it. "The duty imposed on a parent to supervise and control a child is a duty to use reasonable care according to the circumstances." Fleming, Torts (2d Ed.) p. 649.

The court is unable to agree that the plaintiffs failed to prove the material allegations of the complaint. To the contrary, the jury could have given credence to the testimony produced by the plaintiffs and drawn all reasonable inferences in arriving at their decision. Apparently the jury did determine that the defendants failed in their duty to exercise

reasonable care so to control their son Michael as to prevent him from intentionally harming James Jarboe, since they knew or had reason to know that they had the ability to control Michael and they knew or should have known of the necessity and opportunity for exercising such control and knew of his fascination with fire and playing with matches. Therefore the court, in accordance with the modern legal concept, is not disposed to set aside the verdict. It is the considered opinion of the court that the verdict is sustained in law and in fact.

The motion to set aside the verdict and for judgment notwithstanding the verdict is denied.