■ ERIKA PIETRZAK, an Infant, by Her Father and Natural Guardian, RICHARD PIETRZAK, Plaintiff, and RICHARD PIETRZAK, Respondent, v GARNET McGRATH et al., Appellants. (And a Third-Party Action.) — In a negligence action to recover damages for personal injuries, etc., defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Orange County (O'Gorman, J.), dated March 31, 1980, as, upon reargument, adhered to its original determination granting plaintiffs' motion to dismiss defendants' counterclaim which sought an apportionment of damages. Order affirmed insofar as appealed from, without costs or disbursements. On April 16, 1979, the infant plaintiff Erika Pietrzak, then eight years old, unaccompanied by either of her parents, was a guest at the defendants' residence on Wilson Place in Cornwall, New York. At that time she resided with her parents, third-party defendant Linda Pietrzak and plaintiff Richard Pietrzak, at their home in a neighboring house also located on Wilson Place. On that day, the infant plaintiff's left arm was covered by a cast which extended from her left shoulder to her wrist and which restrained her left arm against her chest, permitting movement only of her fingers, which were affixed in a position near her right

shoulder. The infant plaintiff wore this cast as the result of injuries sustained in a fall from a bicycle about one month prior to April 16, 1979. In the early afternoon, the infant plaintiff and the infant defendant were seated upon opposite ends of the seesaw in the defendants' back yard. The infant plaintiff fell off the seesaw, landed on the ground and sustained an injury to her right elbow. Richard Pietrzak brought this action on his own behalf and on behalf of his injured child. In their complaint, plaintiffs alleged that defendants Garnet and Earl McGrath were negligent, reckless and careless in failing to control and/or supervise the infant plaintiff and infant defendant while on their property; in allowing and permitting the infant plaintiff, knowing of her medical condition, to use the seesaw on their premises; in failing to take those steps necessary to avoid the accident; and in failing to use that degree of caution, prudence and care which was sensible and proper under the circumstances. Plaintiffs further alleged that the infant defendant, Pamela McGrath, was negligent in removing herself from the lower half of the seesaw while the infant plaintiff was in the up position, in that the infant defendant knew or should have known that her actions would cause injury to the infant plaintiff. Defendants' answer denied the material allegations of the complaint, and, in a *Dole-Dow* counterclaim (see *Dole v Dow Chem. Co.,* 30 NY2d 143), alleged that if the infant plaintiff was found to have sustained the damages alleged in the complaint, then the plaintiff Richard Pietrzak was liable over to the defendants in whole, or in part, for such judgment on the basis of an apportionment of responsibility between said plaintiff and the defendants. Plaintiffs moved to dismiss defendants' counterclaim alleging it did not contain certain specific allegations of negligence against the plaintiff Richard Pietrzak. Defendants' attorney submitted an affirmation in opposition to plaintiffs' motion, arguing that the counterclaim stated a valid cause of action under *Nolechek v Gesuale* (46 NY2d 332). Defendants alleged that the father owed a duty to third parties such as the defendants to control his child's use of dangerous instruments. Defendants argued that a seesaw, which is "a plaything" carrying "some potential of danger in its use, becomes 'dangerous' when allowed to be used by a child who is not only lacking the use of an arm but who may have suffered from an uncertainty of balance as a consequence." Thus, defendants argued that the plaintiff father, in permitting his child to use the now "dangerous" instrumentality, breached his duty to third parties such as defendants. Special Term granted the motion to dismiss defendants' counterclaim. Defendants moved "to reargue and renew" their motion. In support of the application, defendants' attorney affirmed that between the time that the original motion was brought and the rendering of the court's decision, examinations before trial of the parties were conducted. The testimony given thereat, it is claimed, clearly shows that there is a proper legal basis for the counterclaim asserted by the defendants against the plaintiff parent. The infant plaintiff testified that about one month before the accident of April 16, 1979, she had fallen from a bicycle, coincidentally while also on the defendants' property, and had injured her upper left arm at the shoulder. The left arm was encased in a cast which extended from her left shoulder down to her wrist immobilizing her left arm against her chest. She stated that her father did not give her specific instructions regarding her use of the seesaw at the defendants' house during the period of her disability. Moreover, the infant plaintiff testified that her mother, the third-party defendant, had told her she might use the seesaw. Special Term granted reargument and adhered to its original determination dismissing the counterclaim. The issue in this case is whether a seesaw is a dangerous instrumentality within the meaning of *Nolechek v Gesuale* (46 NY2d 332, *supra*). In *Nolecheck* (*supra*, p 340), the Court of Appeals, citing

*Holodook v Spencer* (36 NY2d 35), stated that third-party tort-feasors are not entitled to contribution from parents for liability resulting in part from negligent supervision of children. However, when dangerous instruments are involved the considerations are different. The Court of Appeals stated (at p 340): "The parent's duty, unlike the duty of adequate supervision not legally cognizable in tort, is not a duty owed the children. It is a duty to protect third parties from the foreseeable harm that results from the children's improvident use of dangerous instruments, to the extent that such use is subject to parental control." Defendants cite no support for their contention that a seesaw is a dangerous instrument. Items held to be "dangerous instrumentalities" when entrusted to the use, operation or possession of children have been motorized bikes, "B-B" guns, motorcycles, motorboats, or airplanes. (See, e.g., *Lalomia v Bankers & Shippers Ins. Co.*, 35 AD2d 114, affd 31 NY2d 830; *Lichtenthal v Gawoski*, 44 AD2d 771; *Nolechek v Gesuale, supra; Neumann v Shlansky*, 58 Misc 2d 128, affd 36 AD2d 540; see, also, Prosser, Torts [4th ed], § 123.) Moreover, in *Nolechek* (*supra*, p 338), the Court of Appeals indicated that the following items could possibly be dangerous instruments when used by children: bicycles, lawn mowers, power tools, motorcycles or automobiles. In *Le Sauvage v Freedman* (100 Misc 2d 857), it was held that a fiberglass sailboat was a "dangerous instrumentality." The court, in reaching its determination, stated (*supra*, p 861) that "[a] sailboat may be deemed a 'dangerous instrumentality' upon examination of its size, weight, shape and operating potential." Under the facts and circumstances of this case, the seesaw was not a dangerous instrumentality. Harm, unfortunately, comes to children in their play. (See, e.g., *Rader v Bradley Co.*, 62 Misc 2d 610.) Even if the plaintiff parent could have foreseen that the seesaw was to be used by the infant plaintiff, that fact cannot impose liability upon him in the absence of proof of the use of a dangerous instrumentality or of negligence based on his own conduct. Mollen, P. J., Hopkins, Titone and Weinstein, JJ., concur.