Paul Young et al., Appellants, v Edward Dalidowicz, Respondent.

Second Department, March 14, 1983

APPEARANCES OF COUNSEL

*Deegan, Scibilia & Reardon* (*Donald E. Deegan* of counsel), for appellants.

*Alio & Leahy* (*Martin Glushakoff* on the brief), for respondent.

OPINION OF THE COURT

Mangano, J.

In *Nolechek v Gesuale* (46 NY2d 332), the Court of Appeals held that an alleged tort-feasor, who may be liable in damages for injuries suffered by an infant child, may seek indemnity or contribution from the injured child's parent when the child's injury, and the tort-feasor's consequent tort liability, resulted from the parent's negligence in entrusting a dangerous instrument to the child. The sole question raised on this appeal is whether a skateboard is a dangerous instrument within the meaning of the holding of the Court of Appeals in *Nolechek* (*supra*).

In our view, the question must be answered in the negative.

THE PLEADINGS

In this personal injury action, the infant plaintiff, Paul Young, while he was riding on his skateboard was struck by a vehicle driven by the defendant.

Specifically, the complaint alleged that: "on October 5, 1980, while Paul Young, the plaintiff, was lawfully on the roadway on * * * Davis Street, the said vehicle owned and operated by the defendant was so carelessly, negligently and recklessly operated so as to cause the same to come in contact with the plaintiff, Paul Young, causing severe and grievous bodily injuries."

Defendant counterclaimed against the infant's father, plaintiff Michael Young, seeking contribution for the father's equitable share of any judgment recovered from defendant by plaintiffs. The theory of recovery upon which the counterclaim was based was that the father breached his duty to defendant by negligently entrusting to the infant plaintiff a dangerous instrument, thereby causing defendant harm in the form of exposure to tort liability. Defendant's counterclaim alleged that the skateboard was a dangerous instrument.

Specifically, the counterclaim alleged: "[t]hat if the plaintiffs sustained damages in the manner alleged in the complaint and recovers [sic] judgment against the answering defendant, such damages will have been brought about in whole or in part as a result of the culpable actions and conduct of plaintiff, MICHAEL YOUNG, in causing, permitting and allowing infant plaintiff to engage in inherently dangerous and hazardous activity, namely skate boarding on plaintiff, MICHAEL YOUNG'S, driveway and in otherwise being negligent, and the answering defendant shall be entitled to contribution from the plaintiff, MICHAEL YOUNG, of an equitable share of any such judgment on the basis of the comparative degree of culpability of the said MICHAEL YOUNG."

Plaintiffs moved to dismiss the counterclaim under CPLR 3211 (subd [a], par 7) for failure to state a cause of action on the ground that a skateboard is not a dangerous instrument as a matter of law.

In support of the motion to dismiss the counterclaim, plaintiffs alleged that in *Holodook v Spencer* (36 NY2d 35),

the Court of Appeals held that a parent may not be held liable to his infant child for negligence in failing to provide adequate supervision and that "the absence of the primary cause of action" by the injured infant against his parent for negligent supervision, defeated the counterclaim asserted by a third-party tort-feasor against the parent (*Holodook, supra,* p 51). According to plaintiffs, the court in *Holodook* found compelling policy reasons for not creating a negligent supervision action against a parent. Although plaintiffs conceded that there were exceptions to the *Holodook* rule, they argued that the unique circumstances needed to create such an exception were not present in the case at bar.

In opposition to the motion to dismiss, defendant stressed the exception to the *Holodook* rule which was enunciated in *Nolechek* (46 NY2d, at p 341) as follows:

"Of course, in the particular contexts presented in the *Holodook* case, considerations of intrafamily relations were given greater prominence (see *Holodook v Spencer,* 36 NY2d 35, 46-49, *supra*). But that was because in the *Holodook* case, the duty suggested, explored, and rejected by the court was one running only from parent to child. Third-party rights were at issue only incidentally. By contrast, when dangerous instruments are involved with a third party's conduct providing a concurrent condition or cause of the harm incurred, the duty is one running only from the parent to third parties. Intrafamilial considerations must therefore be subordinated, to some extent, to the other policy interests involved.

"The sound rule of the *Holodook* case survives only if accompanied by sound exceptions. A parent who entrusts an infant child with a dangerous instrument creates a danger to all society. It would be repulsive to permit, under the guise of protecting intrafamily relations, such a parent to escape all liability to a 'concurrent' tort-feasor who suffers financial harm as a consequence of the child's inappropriate use of the dangerous instrument and resulting injury.

"Moreover, even when it is most significant, the potential harm that could result from permitting counterclaims

or third-party claims by tort-feasors against parents is somewhat speculative".

According to defendant, the plaintiff parent here was grossly negligent in permitting the infant plaintiff "to skateboard on his driveway, onto the roadway". According to defendant's counsel: "Skateboarding is not like bicycle riding, for example. When you are on a skateboard, you can't see the road at all, and, unlike a bicycle a skateboard does not have brakes. Therefore, I submit that it was gross negligence on the part of the plaintiff MICHAEL YOUNG to permit this inherently dangerous activity to occur. Since it occurred at or about the premises of the plaintiff MICHAEL YOUNG, he knew full well that it was going on, but yet permitted this inherently dangerous situation to develop. Under the circumstances, this skateboard could be considered a dangerous instrument, particularly in the way that plaintiff knew that the infant plaintiff was using it, and that the activity engaged in by infant plaintiff, with the blessing of the plaintiff, was inherently dangerous."

In reply, plaintiffs alleged that the facts in *Nolechek v Gesuale* (46 NY2d 332, *supra*), were clearly distinguishable from those at bar.

### DECISION OF SPECIAL TERM

Special Term, citing *Nolechek,* denied plaintiffs' motion to dismiss the defendant's counterclaim and held in relevant part as follows: "In this State, a parent is ordinarily not liable to a third-party for custodial and supervisory negligence of the parent's child (See *Holodook* v. *Spencer,* 36 NY2d 35, 51; *Kiernan* v. *Jones,* 73 Misc 2d 829; *Marrero* v. *Just Cab Corp.,* 71 Misc 2d 474). Here, however, the instant counterclaim seeks to hold the infant's father liable in negligence 'in causing, permitting and allowing [the] infant plaintiff to engage in inherently dangerous and hazardous activity, namely skateboarding on plaintiff, Michael Young's, driveway.' As pleaded, the counterclaim sufficiently states a cause of action."

### THE LAW

In *Nolechek v Gesuale* (*supra*), the Court of Appeals held that although a parent may not be held liable to his infant child in an action for personal injuries resulting from the

parent's negligent supervision (*Holodook v Spencer,* 36 NY2d 35, *supra*), a parent may be held liable to a tort-feasor who has injured an infant child, when the parent has negligently permitted the infant to use a dangerous instrument which contributed to the accident.

Specifically, in *Nolechek* the court stated (*supra,* pp 338-340):

"[I]t is well-established law that a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use (see, e.g., *Lalomia v Bankers & Shippers Ins. Co.,* 35 AD2d 114, 117, affd on opn at App Div 31 NY2d 830, *supra; Carmona v Padilla,* 4 AD2d 181, 183, affd 4 NY2d 767, *supra; Lichtenthal v Gawoski,* 44 AD2d 771, 772; *Zuckerberg v Munzer,* 277 App Div 1061; *Agnesini v Olsen,* 277 App Div 1006). This is not because parents are obliged to raise their children in any particular way; it is because however the children are raised, there must be respect for the hazards created for third parties. Parents are permitted to delegate to their children the decision to participate in dangerous activities, but they are not absolved from liability for harm incurred by third parties when the parents as adults unreasonably, with respect to such third parties, permit their children to use dangerous instruments.

"To be sure, the harm to third parties in this case is not the direct, physical injury ordinarily caused by dangerous instruments. Instead, involved is financial harm resulting from potential liability of a 'concurrent' tort-feasor for the child's death while using the dangerous instrument. But this is harm nevertheless, and harm for which a parent should be responsible if permitting his child to use the dangerous instrument was indeed negligent. It matters not that the parent would not be liable to his child in an action for personal injuries; the financial harm suffered by the third party results from a legally cognizable breach of duty different in kind from any moral breach of duty to the child * * *

"When a parent has negligently permitted an infant child to use a dangerous instrument, however, there has

been a breach of an established duty to third persons who may be harmed. That the harm may not, in a particular case, be a direct personal injury should not absolve the parent from liability. A dangerous instrument in the hands of an infant child may foreseeably cause various types of harm: personal injury, property damage, or, as in this case, exposure to tort liability. The parent's duty, unlike the duty of adequate supervision not legally cognizable in tort, is not a duty owed the children. It is a duty to protect third parties from the foreseeable harm that results from the children's improvident use of dangerous instruments, to the extent that such use is subject to parental control. It may not be concluded, as a matter of law, that the risk of a third party's tort liability to an injured child is not a foreseeable risk to such third parties when a parent has negligently entrusted the child with a dangerous instrument."

The court in *Nolechek* went on to hold that the counterclaim asserted therein against the plaintiff parent for negligently allowing the infant to use a motorcycle, stated a valid cause of action. In so holding, the court stressed that the counterclaim specifically alleged that the infant, for whom the motorcycle was purchased by his father, was blind in one eye and had impaired vision in the other. Moreover, he did not possess, nor did he ever apply for, an operator's license of any type (cf. *Mulcahy v County of Monroe,* 78 AD2d 1012, where the Fourth Department dismissed a counterclaim based on a father's failure to supervise his son's use of a motorcycle).

In several decisions prior to *Nolechek v Gesuale* (46 NY2d 332, *supra*), courts had expressed their views as to whether various instruments were dangerous under the circumstances. Among the instruments considered dangerous were: (1) a "BB gun" fired by a three year old (*Masone v Gianotti,* 54 AD2d 269); (2) a chain saw operated by a 17 year old (*Bucholtz v Grimmer,* 50 AD2d 1062); and (3) a motorized bicycle operated by a 12 year old (*Lalomia v Bankers & Shippers Ins. Co.,* 35 AD2d 114, affd 31 NY2d 830). On the other hand, it was held by this court in *Steinberg v Cauchois* (249 App Div 518) that a bicycle is not a dangerous instrument.

In cases decided since *Nolechek*, the courts have further attempted to define a dangerous instrument on an *ad hoc* basis.

In *Vitale v Singer* (82 AD2d 802), this court upheld a counterclaim which alleged that the parents were negligent in allowing their son to ride a bicycle which they knew was defective.

In *Alfano v Marlboro Airport* (85 AD2d 674), this court held that a parent could not be held in contribution for negligent supervision of his 17-year-old son's operation of a snowmobile, when the minor was proficient in the use thereof, had a driver's license and had no physical impediments.

In *Pietrzak v McGrath* (85 AD2d 720), this court held that a seesaw was not a dangerous instrument (cf. *Lofreddo v Town of Brookhaven*, 87 AD2d 623).

In *Gordon v Harris* (86 AD2d 948), the Third Department held that a toy rifle, from which a fragment dislodged striking another infant, was not a dangerous instrument.

In *Le Sauvage v Freedman* (100 Misc 2d 857, 861), the court held that a parent could be held liable for negligently entrusting a dangerous instrument to his 13-year-old son, when the item was a "substantial sailing vessel".

In all of these cases the courts have focused on the nature, complexity, and size of the instrument as well as the age and proficiency of the infant utilizing it.

In the case at bar, the infant plaintiff, who had no physical impairments, was injured when he rode his skateboard into the street. In our view, the skateboard utilized in the case at bar was not different from other normal items of play used by children such as seesaws, or bicycles, which the courts have held are not dangerous instruments (*Steinberg v Cauchois, supra; Pietrzak v McGrath, supra*). As this court stated in *Pietrzak v McGrath* (*supra*, p 722), "Harm, unfortunately, comes to children in their play."

Accordingly, the order appealed from should be reversed, plaintiffs' motion should be granted and the counterclaim should be dismissed.

DAMIANI, J. P., O'CONNOR and BROWN, JJ., concur.

Appeal by plaintiffs from an order of the Supreme Court, Nassau County, dated March 1, 1982, which denied their motion pursuant to CPLR 3211 (subd [a], par 7) to dismiss defendant's counterclaim for failure to state a cause of action.

Order reversed, on the law, with $50 costs and disbursements, motion granted, and counterclaim dismissed.