REPUBLIC INSURANCE COMPANY as subrogee of Willie Golatt and Marion Golatt, Plaintiff,

v.

Catherine MICHEL, et al., Defendants.

No. CV 93–0430(JMA).

United States District Court, E.D. New York.

Feb. 23, 1995.

Jonathan A. Murphy, Lester, Schwab, Katz & Dwyer, New York City, for plaintiff.

Jerrold N. Cohen, Mineola, NY, for defendants.

1. Defendant originally moved to dismiss this action against Tymic Moore due to allegedly defective service, but that motion has been withdrawn.

*MEMORANDUM AND ORDER*

AZRACK, United States Magistrate Judge:

This case was referred to the undersigned by the Honorable Jack B. Weinstein, and was subsequently reassigned to the Honorable David Trager, United States District Court Judge for the Eastern District of New York. Thereafter, on June 15, 1994, this case was referred on consent to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c).

Defendants now move for summary judgment on three distinct grounds. Defendants argue that (1) there is no admissible evidence to demonstrate the cause of the fire; (2) that matches and/or cigarette lighters are not inherently dangerous instrumentalities which require extraordinary precautions on the part of a parent or grandparent of a four year old; and (3) even assuming the fire was started by the infant plaintiff, at the age of four years he was *non sui juris* and not responsible for his actions. (Defs.' Mot. for Summ.J., pp. 6–7).[1] For the reasons stated below, defendants' motion is denied in its entirety.

## I. FACTS

On April 14, 1992 defendant Catherine Michel owned and resided at 113–24 208th Street, Queens Village New York. Ms. Michel's husband, Gerrard Michel, her daughter, Alma Whitt and her great-grandchildren Tymic Moore and Catherine Moore also resided at that address. At that time, plaintiff's subrogors, Willie Golatt and Marion Golatt, lived next door at 113–26 208th Street. On April 14, 1992, a fire originated on defendants' premises and spread to the Golatt's neighboring house causing plaintiff, Republic Insurance Company to pay a claim of damages in the amount of $126,058.89.

At the time the fire began, Gerrard Michel, Alma Whitt and the two small children were at home, while Catherine Michel was at work. At approximately 1:00 p.m. Gerrard was in the dining room,[2] Alma was in the

2. It appears that a friend of Gerrard's, Patrice, may have been in the house at the time of the fire, but the record is unclear as to this fact and neither party has argued that Patrice's presence is significant to this case.

kitchen and the two children were in the vicinity of the back room of the house when Tymic alerted Alma to the existence of a fire in the back room. (Whitt Dep. at pp. 10, 18; G. Michel Dep. p. 51). Alma confirmed this fact, yelled to Gerrard and exited the house with the two children. Gerrard remained in the house and made an attempt to squelch the fire by dragging a burning mattress out of the back room through the first floor of the house. The fire continued to blaze and spread to the neighboring house owned by plaintiff's subrogors causing damage to the neighboring house.

The New York City Fire Department (hereinafter "FDNY") responded to and eventually extinguished the fire. Subsequently, Fire Marshal Higgins conducted an investigation into the cause of the fire and found that the fire originated in the rear of the house and was caused by a "child playing with lighter." (FDNY Report, Apr. 14, 1992). Marshal Higgins' report also indicated that:

> Tymik [sic] is the grandson of Alma Witt [sic] and lives in the fire building. Tymik was interviewed in the presence of his grandmother. Tymik stated that he was in the bedroom on the bed playing with a cigarette lighter and the bed caught fire. He then went into the kitchen and told his grandmother there was a fire.

(FDNY Report, Apr. 14, 1992). Moreover, Marshal Higgins testified at deposition that he eliminated all other possible causes of the fire, i.e. acts of God, incendiary devices, and electrical devices and that he had no doubt in his mind that Tymic started the fire based upon his investigation and his twenty minute long interview with Tymic with the assistance of Alma Whitt. (Higgins Dep. pp. 19–21, 27). Marshal Higgins recalled that Tymic appeared to have a speech problem but did not recall any "rambling" by Tymic. (Higgins Dep. pp. 49, 52).

3. This is the first mention that Monica, Catherine Michel's granddaughter, was at the house at the house and this is inconsistent with the remainder of the record. (*See* C. Michel Dep. p. 18).

4. Issues remain as to whether other factors, such as Gerrard Michel's dragging the burning mat-

Subsequently, Fire Marshal Guarnieri continued the FDNY's investigation of the fire and noted that Catherine Michel stated that Tymic had an untreated speech defect. Fire Marshal Guarnieri concluded that Tymic

> really did not know the consequences of playing with the cigarette lighter. Tymik has a speech defect and at times starts to talk about what was asked of him, but then just goes off and appears to be rambling. The problem appears to be that it is very difficult to understand Tymik due to his speech defect. Tymik did admit to playing with the lighter and the undersigned did determine that there was a lighter in the bedroom. Tymik did not understand most questions and it was very difficult to communicate with him. The family was asked to call the undersigned if the problem occurs again, but it is believed that this was just a curiosity fire. The interview was conducted at another location. (FDNY Report, July 15, 1992 ¶¶ 2, 4).

Subsequently, William Nolan of Connell, Nolan Associates, Ltd., a fire investigation firm contacted by defendants, investigated the cause of the fire. Mr. Nolan examined the interior of the house and eliminated potential causes of the fire such as the electrical and heating systems. (Nolan Report, May 26, 1992, pp. 3–6). Mr. Nolan interviewed Catherine Michel who indicated, *inter alia,* that both Gerrard Michel and Monica Moore were smokers at the time of the fire and had been smoking in the premises prior to the fire.[3] (Nolan Report, p. 9). According to Mr. Nolan, Catherine Michel also stated that she did not know the cause of the fire but that the fire marshal had said it was "accidental, electrical." (Nolan Report, p. 13). Mr. Nolan also contacted the FDNY and received a copy of the FDNY reports filed in this case. (Nolan Report, p. 14). Mr. Nolan concluded that Tymic was responsible for the fire based upon the burn patterns, an examination of all potential heat sources, and information gained from the FDNY reports. (Nolan Report, pp. 15–16).[4]

tress out of the house in an effort to squelch the fire exacerbated the spread of the fire. These issues are beyond the scope of this motion for summary judgment and will not be discussed herein.

Depositions of Catherine Michel, Gerrard Michel, Alma Whitt, Willie P. Nolan, Fire Marshal Higgins, Marion Golatt were taken in this action. These depositions produced inconsistent information regarding the fire and the ensuing investigations. Specifically, Ms. Golatt testified that she had witnessed Tymic throwing matches out of a window in his house, and that she had informed Catherine Michel, Alma Whitt and Monica More of these incidents.[5] (Golatt Dep. pp. 29–32). The members of the Michel household, however, deny that Tymic had a propensity to play with fire or that Ms. Golatt informed them of any prior incidents in which Tymic played with matches. Additionally, Alma contends that neither she nor Tymic were interviewed by the FDNY after the fire, but Alma did testify that she spoke with Marshal Higgins (Whitt Dep. pp. 26–27) and Gerrard testified that he heard Tymic had talked to the FDNY. (G. Michel Dep. pp. 52–53).

These depositions also revealed the fact that both Gerrard and Alma were cigarette smokers at the time of the fire and that they used lighters in their smoking habits. (C. Michel Dep. p. 19; G. Michel Dep. pp. 29–80; Whitt Dep. pp. 13–14). Moreover, Gerrard, Catherine and Alma all stated that they did not know how the fire started. (G. Michel Dep. p. 82; Whitt Dep. p. 12).

It is upon this factual record that defendants' motion for summary judgment will be decided.

## II. DISCUSSION

Summary judgment shall be granted when the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Westnau Land Corp. v. United States Small Business Admin.*, 1 F.3d 112, 113 (2d Cir.1992) (citing *Suburban Propane v. Proctor Gas*, 953 F.2d 780, 788 (2d Cir.1992). Material facts are "facts that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at

248, 106 S.Ct. at 2510. Whether a dispute of material fact is genuine depends on whether a reasonable juror could return a verdict for the nonmoving party in light of that fact. *Id.*

The moving party bears the initial burden of showing that no disputed issue of material fact exists. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Once the movant establishes, through competent evidence, the absence of material facts, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial," and must show that "his claim is not 'implausible.'" *Brady v. Colchester*, 863 F.2d 205, 211 (2d Cir.1988) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The court must resolve all ambiguities and inferences in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88, 106 S.Ct. at 1356–57; *Brady*, 863 F.2d at 210, *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

## A. SUMMARY JUDGMENT AS TO THE CAUSE OF THE FIRE

■ Defendants' first argument for summary judgment is that no issue of triable fact exists regarding the cause of the fire at 113–24 208th Street and that the evidence precludes a finding that Tymic Moore was responsible for the fire. The present record does not support such a finding, and summary judgment on this issue is denied.

A review of the present record demonstrates that defendants' argument is not supported by the facts of this case. Even upon resolving all factual ambiguities and inferences in favor of defendants, the record still indicates that Tymic may have been the cause of the fire. On the day of the fire, Fire Marshall Higgins interviewed Tymic and concluded that he was the cause of the fire. Even assuming that Tymic's alleged speech

---

5. At oral argument, plaintiff's counsel argued to this Court that at the time of her deposition, Ms. Golatt, was an uninterested witness since she

had already received compensation from plaintiff, her insurer.

impediment restricted his ability to communicate clearly with Marshall Higgins, the statements recorded by Marshall Higgins raise an issue of material fact whether Tymic started the fire. Additionally, the record indicates that Marshal Higgins' investigation into the cause of the fire eliminated all other possible causes of the fire, leaving only the potential cause of human involvement responsible for the fire. Moreover, defendants' argument that matches/lighters were kept out of Tymic's reach may be rebutted by the fact that two members of the defendants' household smoked cigarettes at the time of the fire. The possibility that a young child would gain access to matches or a lighter belonging to an adult member of his household is not unheard of.

Furthermore, although Fire Marshal Guarnieri found Tymic's speech impediment a great restriction on Tymic's ability to communicate, Marshal Guarnieri was able to understand Tymic's confession that he played with a lighter in the back room. Marshal Guarnieri also indicated that he did "determine that there was a lighter in the bedroom." (FDNY Report, July 15, 1992 ¶ 4). Defendants' investigator, Mr. Nolan, also concluded that Tymic caused the fire based upon his independent investigation which eliminated all other possible causes of the fire and the FDNY's reports finding that Tymic caused the fire. The weight given to Mr. Nolan's conclusion is questionable since he relied in part on the FDNY's reports, but, Mr. Nolan did eliminate all other potential causes for the fire indicating the presence of an unknown outside source which caused the fire.

Even if this Court accepted defendants' arguments that Tymic had a severe speech impediment but did not have a propensity to play with fire, this Court would not grant summary judgment. The evidence that the fire started in the back room by Tymic is supported by the three investigations, al-

leged statements by Tymic Moore, and the elimination of other causes of the fire. Moreover, defendants have not suggested an alternate cause of the fire and have merely stated that they do not know what caused the fire. The present record is replete with triable issues of fact as to the cause of the fire which cannot be resolved on this motion for summary judgment.

### B. MATCHES OR A CIGARETTE LIGHTER AS AN INHERENTLY DANGEROUS INSTRUMENTALITY

■ Defendants also move for summary judgment on the ground that the adult defendants cannot be liable for negligently entrusting young Tymic with a cigarette lighter because a lighter is not a dangerous instrumentality.[6] In the present case, defendants have failed to demonstrate that no genuine issue of material facts exists as to the dangerousness of a cigarette lighter in the hands of an unsupervised four and four month year old child. Since the status of a lighter cannot be unequivocally resolved on this record, both defendants' and plaintiff's request for summary judgment on this issue are denied.

■ Under New York law, parents are generally not liable for the negligent supervision of their children, see Holodook v. Spencer, 36 N.Y.2d 35, 51, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974), however, the Court of Appeals carved out a narrow exception to this rule where the parent negligently entrusts a dangerous instrument to the care of a child.[7] See Nolechek v. Gesuale, 46 N.Y.2d 332, 338, 385 N.E.2d 1268, 413 N.Y.S.2d 340 (1978). "[A] parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use." Id. Thus, the first relevant inquiry to a claim for negligent entrustment is whether

---

6. It is unclear whether matches or a lighter may have been employed in this case, but they are referred to interchangeably in this Memorandum and Order. Defendants do not concede that a lighter was entrusted to Tymic, and this section does assume such an entrustment as the record is not developed on this issue.

7. The terms "dangerous instrument" and "dangerous instrumentalities" are used interchangeably by courts and will be so used in this Memorandum and Order.

the underlying object is a dangerous instrument.

■ Dangerous instruments are those things which in their normal operation are implements of destruction, but certain instruments which are not inherently dangerous may become so in the hands of a child. *Young v. Dalidowicz,* 92 A.D.2d 242, 460 N.Y.S.2d 82 (N.Y.App.Div., 2d Dep't 1983). *See Nolechek,* 46 N.Y.2d at 337, 385 N.E.2d at 1271, 413 N.Y.S.2d at 344 (noting that a pencil may become a dangerous instrument under certain circumstances). The determination of whether a particular item is dangerous in the hands of a child "depends upon the nature and complexity of the allegedly dangerous instrument, the age, intelligence and experience of the child, and his proficiency with the instrument." *Bottillo v. Poette,* 152 A.D.2d 840, 544 N.Y.S.2d 47 (N.Y.App. Div., 3rd Dep't 1989); *see Alessi v. Alessi,* 103 A.D.2d 1023, 478 N.Y.S.2d 396 (N.Y.App. Div., 4th Dep't 1984). This analysis balances the duty owed by parents to third parties, with the commonly known fact that "[c]hildren might, at various points in their development, be permitted, and properly so, to use bicycles, lawn mowers, power tools, motorcycles, or automobiles, all of which are, in some contingencies, 'dangerous instruments'" *Nolechek,* 46 N.Y.2d at 338, 385 N.E.2d at 1272, 413 N.Y.S.2d at 344.

The types of instruments that have been found to be dangerous in the hands of a young child are cars, motorcycles, motorboats, guns, and BB guns. *Acquaviva v. Piazzolla,* 100 A.D.2d 502, 472 N.Y.S.2d 704 (N.Y.App.Div., 2d Dep't), *appeal dismissed,* 62 N.Y.2d 604, 467 N.E.2d 532, 478 N.Y.S.2d 1023 (1984) (an unlocked car with its windows open was a dangerous instrument); *LeSauvage v. Freedman,* 100 Misc.2d 857, 419 N.Y.S.2d 1018 (N.Y.Civ.Ct.1979) (motorboat was dangerous instrument in hands of teenage boy); *Zellers v. Devaney,* 155 Misc.2d 534, 589 N.Y.S.2d 134 (Sup.Ct., Orange Co.1992) (BB gun a dangerous instrument as a matter of law, based on cases cited therein). Those items that have been found to not be dangerous instruments in certain circumstances are bicycles, toys, a skateboard, a waterslide, and pizza. *Santalucia v. County of Broome,* 205 A.D.2d 969, 613 N.Y.S.2d 774 (1994) (bicycle); *Parsons v. Wham–O, Inc.,* 150 A.D.2d 435, 541 N.Y.S.2d 44 (N.Y.App. Div., 2d Dep't 1989) (waterslide); *Young v. Dalidowicz,* 92 A.D.2d 242, 460 N.Y.S.2d 82 (skateboard); *Keohan v. Di Paola,* 97 A.D.2d 596, 468 N.Y.S.2d 218 (N.Y.App.Div., 3rd Dep't 1983) (pizza not a dangerous instrumentality as it was placed on child's lap); *Pietrzak v. McGrath,* 85 A.D.2d 720, 445 N.Y.S.2d 827 (N.Y.App.Div., 2d Dep't 1981) (seesaw).

■ Where the record is sufficiently developed to indicate whether an object is indeed dangerous or not, a court may determine as a matter of law that the object is or is not a dangerous instrumentality. *See Santalucia,* 613 N.Y.S.2d 774 (bicycle ridden by a 5 year old child not a dangerous instrumentality); *Geter v. Amrani,* No. CV 91 0293856S, 1993 WL 198511 (Conn.Super.Ct., May 27, 1993) (toy peg not a dangerous instrument used by an 18 month old child). Where, however, the record is not so developed, the status of the instrumentality is a question of fact left to the trier of fact. *See Crounse v. Stimpson Computing Scale Co.,* 675 F.Supp. 62 (N.D.N.Y.1987) (meatgrinder); *Alessi v. Alessi,* 103 A.D.2d 1023, 478 N.Y.S.2d 396 (toy airplane); *Jarboe v. Edwards,* 26 Conn.Sup. 350, 223 A.2d 402, 403–404 (1966) (status of matches in the hands of a four year old left to jury since the issue had not yet been decided by the Connecticut Supreme Court).

At the heart of this summary judgment motion, is whether a book of matches or a cigarette lighter in the hands of a four years and four month old child is a dangerous instrument. The status of these objects has not been squarely addressed by the New York courts. In the pre-*Nolechek* decision of *Marks v. Thompson,* 13 N.Y.2d 1029, 195 N.E.2d 311, 245 N.Y.S.2d 601 (1963), the Court of Appeals affirmed the dismissal of an action where a four year old child injured another child when he ignited papers on the floor of a parked automobile. In the Appellate Division's opinion, the court noted that a lighter was essentially not different from other household articles and appliances in constant daily use "which possess some potential

danger but are commonly and necessarily exposed for ready use." *Marks v. Thompson,* 18 A.D.2d 731, 732, 234 N.Y.S.2d 391, 392 (N.Y.App.Div., 3rd Dep't 1962). Since this decision was pre-*Nolechek,* it did not employ the analysis presently binding on this Court, nor did the decision classify the lighter as a dangerous or non-dangerous instrument for purposes of a negligent entrustment action.

A review of other jurisdictions reveals that most courts have not addressed this novel issue or have reserved this issue for the trier of fact. *See Smith v. George,* 178 Ill.App.3d 1087, 128 Ill.Dec. 204, 534 N.E.2d 224 (1989); *Spector v. Neer,* 262 So.2d 689 (Fla.Dist.Ct. App., 3d Dep't 1972); *Lumbermens Mutual Casualty Co. v. Quincy Mutual Fire Ins. Co.,* 220 So.2d 104 (La.App., 3rd Cir., 1969); *Jarboe,* 223 A.2d at 403–404 (novel issue of matches used by a 4 year old was left to jury). While it is laudable that few cases exist dealing with the tragedies that ensue when a child plays with matches, the lack of jurisprudence on this subject leaves an unresolved question as to whether a book of matches or a cigarette lighter is a dangerous instrument. Therefore, the determination of whether a cigarette lighter is a dangerous instrumentality is governed by the facts of this case, including but not limited to Tymic's age, maturity, expertise or experience, and physical or mental disabilities. *See Bottillo,* 152 A.D.2d 840, 544 N.Y.S.2d 47.

Matches and cigarette lighters are by their very nature implements of destruction since they are used for the specific purpose of igniting other objects and their casual misuse could cause serious injury and damage. It is untenable to allege that matches are never dangerous in the hands of a child. Moreover, it is wholly foreseeable that matches or a lighter would cause injury to the public when used by an unsupervised minor. In fact, nationwide campaigns have been waged to alert children to the dangers of playing with fire.

Furthermore, in this case defendants suggest that Tymic had a speech impediment and had a tendency to ramble which may demonstrate a greater inability to understanding warnings about the dangerousness of lighters such that a lighter may be more dangerous in Tymic's hands than another child of his same age. Although defendants argue that matches and cigarette lighters have "utilitarian functions" and need not be secreted away and be kept under lock and key, the Court of Appeals has recognized that benign objects may become dangerous instruments when in the clutches of a young child. *See Nolechek,* 46 N.Y.2d at 337, 385 N.E.2d at 1271, 413 N.Y.S.2d at 344 (noting a pencil may become a dangerous instrument).

This Court cannot grant summary judgment holding that a book of matches or a cigarette lighter in the hands of Tymic Moore could not be a dangerous instrument. Similarly, I am unwilling on the present submissions to find that a book of matches or a cigarette lighter was certainly a dangerous instrument in the case at bar. The Court cannot determine the status of matches in this case without knowing more about the experience, propensity and intelligence of Tymic Moore. The standard announced in New York requires such an analysis be made but the present record does not avail itself to that analysis. Therefore, defendants' motion for summary judgment must be denied and this issue will be decided by the jury.

## C. THE STATUS OF DEFENDANT TYMIC MOORE AS NON SUI JURIS

■ Defendants also move for summary judgment on the first cause of action against infant defendant Tymic Moore. Defendants argue that Tymic's youth at the time of the fire renders him *non sui juris* and thus incapable of committing negligence. The status of a child over the age of four is a question of fact which must address the particular child's ability to comprehend danger and care for himself. Defendants have not met their burden of showing the non-existence of a genuine issue of material fact regarding Tymic's status as a *non sui juris* infant. Therefore, Tymic's status and ability to commit negligence must be decided at trial.

*Non sui juris* law has matured in the context of contributory negligence claims against infant plaintiffs who were the victims

of adult acts of negligence. Generally, in negligence and contributory negligence contexts an infant is not expected to exercise the same degree of care required of an adult, rather, an infant is expected to exercise a level of care commensurate with his age, experience, intelligence and ability. *Camardo v. New York State Rys.*, 247 N.Y. 111, 116, 159 N.E. 879, 880 (1928). An infant, however, may be so young that he is unable to apprehend the existence of danger, take precautions against it and exercise any degree of care for his own safety. The law calls such a child, *non sui juris*,[8] and thus incapable of committing negligence. *See Beekman Estate v. Midonick*, 44 Misc.2d 11, 252 N.Y.S.2d 885 (Sup.Ct., N.Y.Co.1964); *Sierra v. Georgiou*, 236 N.Y.S.2d 773, 774 (Sup.Ct., Nassau Co.1962); *Verni v. Johnson*, 295 N.Y. 436, 68 N.E.2d 431 (1946).

It has often been stated that a child under the age of four years is *non sui juris* as a matter of law. *Yun Jeong Koo v. St. Bernard*, 89 Misc.2d 775, 392 N.Y.S.2d 815 (Sup. Ct., Queens Co.1977), *Beekman Estate*, 44 Misc.2d 11, 252 N.Y.S.2d 885; *Verni*, 295 N.Y. 436, 68 N.E.2d 431; *Meyer v. Inguaggiato*, 258 A.D. 331, 16 N.Y.S.2d 672, 673–74, *appeal denied*, 258 A.D. 1055, 17 N.Y.S.2d 1021 (N.Y.App.Div., 2d Dep't 1940); *Mangam v. Brooklyn R. Co.*, 38 N.Y. 455, 460 (1868). Other courts have held that there is a mere presumption of incapacity for children under the age of four. *Snell v. Motor Vehicle Accident Indemnification Corp.*, 34 A.D.2d 872, 310 N.Y.S.2d 828 (N.Y.App.Div., 3rd Dep't 1970), *Chandler v. Keene*, 5 A.D.2d 42, 168 N.Y.S.2d 788 (N.Y.App.Div., 3rd Dep't 1957).

■ Where an infant is older than four years of age, the status of that child as *sui juris* or *non sui juris* is to be determined by the trier of fact. *See Woods v. United States*, 197 F.Supp. 841, 844 (E.D.N.Y.1961) (after trial, judge found 4 years and 10 month old child was *non sui juris*); *Redmond v. City of New York*, 81 A.D.2d 908, 909, 439 N.Y.S.2d 200, 201 (N.Y.App.Div., 2d Dep't), *aff'd*, 55 N.Y. 796, 432 N.E.2d 136,

447 N.Y.S.2d 434 (1981) (jury determined status of a 4 years and 10 month old child); *Yun Jeong Koo*, 89 Misc.2d 775, 392 N.Y.S.2d 815 (jury to decide status of 4 years and 10 month old child); *Searles v. Dardani*, 75 Misc.2d 279, 347 N.Y.S.2d 662 (Sup.Ct., Albany Co.1973) (status of 4 and one half year old child may be passed upon by the trial justice); *Chandler*, 5 A.D.2d 42, 168 N.Y.S.2d 788 (status of a child of 4 years, 11 months and 10 days old put to the jury); *Camardo*, 247 N.Y. 111, 159 N.E. 879. *Cf. Ehrlich v. Marra*, 32 A.D.2d 638, 300 N.Y.S.2d 81 (N.Y.App.Div., 2d Dep't 1969) (finding, without discussion, that a child of 4 years and 10 months of age was *non sui juris* as a matter of law). Age alone, however, does not determine the ability of a child to care for himself, one must also consider a child's intelligence, experience and ability to apprehend the existence of danger, take precautions against it and exercise any degree of care for his own safety. *See Woods*, 197 F.Supp. at 844; *Weidenfeld v. Surface Transport Corp.*, 269 A.D. 341, 55 N.Y.S.2d 780, 783 (N.Y.App.Div., 1st Dep't 1945) (4 year old child not automatically considered *non sui juris*); *Camardo*, 247 N.Y. at 116, 159 N.E. at 880 (no arbitrarily set age at which the duty to exercise some degree of care begins).

Due to the consideration of these additional factors, case law does not preclude the finding that a child over the age of four may never be *non sui juris* as a matter of law. *See Ehrlich*, 32 A.D.2d 638, 300 N.Y.S.2d 81. Specifically

> a case might well arise ... in which the court could properly hold as a matter of law that the injured child was non sui juris even though it was over the age of 4, on the ground that it was so lacking in intelligence and experience as to be incapable of appreciating the nature of the danger and of taking precautions to avoid injury to itself....

*Chandler*, 5 A.D.2d at 44, 168 N.Y.S.2d at 791. Such a determination, would nevertheless require substantial evidence regarding

---

8. The literal translation of this latin phrase is "not his own master." BLACKS LAW DICTIONARY 1058 (6th ed. 1990).

the child's lack of intelligence and immaturity.

In the present case, at the time of the fire Tymic Moore was four years and four and one half months old.[9] Therefore, Tymic was above the age at which a court must conclude that he was *non sui juris* as a matter of law and the question is factual. Here, defendants have failed to proffer evidence demonstrating that there is no genuine issue of material fact that Tymic Moore was *non sui juris* at the time of the fire. Defendants merely state that Tymic was *non sui juris* at the time of the fire. Defendants have not offered evidence of Tymic's level of understanding, maturity or mental capacity at the time of the fire. Defendants have asserted that Tymic had a speech defect in April of 1992, but Tymic's understanding of the dangers of fire was demonstrated by the uncontroverted evidence that Tymic immediately alerted his grandmother to the fire's existence.

Since Tymic's mental ability and maturity at the time of the fire are at the core of this inquiry, defendants' plain conclusory statements cannot support their motion for summary judgment. *See Sierra,* 236 N.Y.S.2d 773 (issue of 5 year old's status precluded grant of summary judgment). Thus, Tymic's status is a determination of fact left to the purview of the ultimate trier of fact. Therefore, this issue cannot be decided on this motion for summary judgment.

## IV. CONCLUSION

For the reasons stated within this Memorandum and Order, defendants' motion for summary judgment on each of the grounds asserted by defendants is denied.

SO ORDERED.

---

9. It is disturbing that defendants have summarily quantified Tymic's age as 4 years old, when he was, in fact, 4 years and four and one half months old at the time of the fire. Tymic was born on November 26, 1987 and the fire occurred on April 14, 1992. Defendant's inaccurate calculation of Tymic's age ignores the measuring point of *non sui juris* law. Plaintiff's failure to independently calculate Tymic's age and challenge defendant's faulty calculations, however, is similarly disturbing.